Albert BOHM, Plaintiff-Appellant,

v.

The **FIDELITY AND CASUALTY COMPA-NY OF NEW YORK**, a corporation, Defendant-Respondent.

No. 32055.

St. Louis Court of Appeals.

Missouri.

Jan. 18, 1966.

Rehearing Denied Feb. 18, 1966.

Benson Cytrom, Weber & Cytron, House Springs, for appellant.

John M. Goodwin, Henry S. Stolar, Hocker, Goodwin & MacGreevy, St. Louis, for respondent.

TOWNSEND, Commissioner.

This action was brought on an accident and disability income policy issued to the plaintiff by the defendant company on July 30, 1958. Plaintiff alleges that he suffered injuries in an automobile accident on November 22, 1960, as a result of which he was totally disabled for a certain period and thereafter up to the time of filing his petition was partially disabled from performing certain substantial duties of his occupation. Defendant has refused to make any payment to plaintiff and as a matter of defence asserts that plaintiff, knowingly and fraudulently, misstated his medical condition in his application for the policy and that he concealed from defendant his previously existing physical condition. Trial was had in May, 1964, resulting in a verdict and judgment for defendant.

In the application for the policy plaintiff was asked the following questions: "10. What indemnity have you received for injury or sickness?" (Ans.) "None". "12. To the best of your knowledge and belief (a) are you .in sound condition mentally and physicially?" (Ans.) "Yes." "(b)

Have you any mental or physical defect not specified above?" (Ans.) "No." "13. Have you received medical or surgical advice or treatment at any time during the last five years or have you been disabled at any time during that period?" (Ans.) "No."

In 1944 plaintiff suffered a back injury while on duty as an army officer due to a shell concussion in the course of an enemy barrage. For a period of nine months thereafter he was hospitalized in various government hospitals. Following this period of hospitalization plaintiff was placed on the retired list as a result of a finding by the appropriate army board that he was not in condition to perform his normal functions. Since that time he has received the pay of an officer of his rank on inactive status. For a period of approximately ten years after retirement plaintiff suffered intermittent pains in his back, but during that period he had no treatment for his back condition other than an occasional massage. Finally his doctor, a personal friend, who had furnished those massages, told him that he needed some exercise to tone up his back muscles. Thereupon plaintiff took up golf. From the time he started playing golf, in 1954 or 1955, he states that he had no further trouble with his back. In the latter part of 1957 or the early part of 1958 plaintiff was hospitalized for a short period because he was having indigestion; his doctor found that he had some duodenal ulcers, which were shortly cleared up.

Section 376.580, V.A.M.S. provides:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury."

The policy issued to plaintiff provided for an accidental death benefit and so was a policy of insurance on his life within the meaning of Section 376.580. Lamport v. General Accident, etc. Corporation, 272 Mo. 19, 197 S.W. 95; Boillot v. Income Guaranty Co., 231 Mo.App. 990, 83 S.W.2d 219.

Defendant's answer sets out that the allegedly fraudulent misstatements of plaintiff relating to his medical condition "were material to plaintiff's disability or loss, if any", but does not directly plead that the matter misrepresented contributed to plaintiff's disability. It is further alleged that the issuance of the policy was induced by plaintiff's fraudulent misrepresentations and by plaintiff's concealment of his previously existing back condition and that the "disability, if any, of the plaintiff, which is the subject of this suit, is directly attributable to and connected with said concealment and misrepresentation". While it is difficult to conceive of back and neck injuries being attributed to a written or spoken statement, liberality in the matter of pleading makes it possible for us to interpret the statement as saying that the disability on account of which the action is brought was contributed to by the matter misrepresented.

In maintaining its asserted defence of misrepresentation, defendant contends that question 10 was falsely answered. It equates the retirement pay of an officer retired because of physical disability to indemnity. It is the position of plaintiff that receipt of retirement pay is not receipt of an indemnity. It is unnecessary to determine that controversy. Assuming that receipt of retirement pay amounts to being indemnified and thereby assuming that the answer to question 10 was a false answer, we are presented the question of the applicability of Section 376.580. That section makes a misrepresentation immaterial unless the matter misrepresented actually contributed to the happening of the event on which payment under the policy depends.

Of course, defendant submitted no evidence that the receipt of retirement pay contributed to the injuries suffered by plaintiff in the automobile accident. Nor could it. In this setting, receipt of such pay could have had no contributory effect.

 The answer to question 13 was plainly a false answer. Plaintiff's own testimony showed that in less than five years before the issuance of the policy he had been hospitalized and treated for duodenal ulcers with complete success. Here again it is obvious that the matter misrepresented had no relation to the happening of the event about which plaintiff seeks recovery. Even if this misrepresentation were treated as fraudulent (as plaintiff's testimony tends to indicate that it was not) that conclusion would not obviate the application of Section 376.580. The provisions thereof apply whether the misrepresentations are fraudulent or innocent. Kern v. Supreme Council, 167 Mo. 471, 67 S.W. 252; Burgess v. Pan-American Life Ins. Co., Mo., 230 S.W. 315.

 This brings us to the allegedly false answers given to the two parts of question 12. In large part the trial of this case seems to have been conducted on the assumption that the ultimate facts to be established were: (a) whether the applicant was in sound condition, mentally and physically, at the time of making application; and, (b) whether the applicant had any mental or physical defect at the time of such application. The real ultimate fact to be established was that of the state of mind of the applicant. At the time of applying he was not asked whether he was in sound condition or whether he had any mental or physical defect. The questions put to him related to his knowledge and belief and accordingly, in considering the matter of misrepresentation, the real query should have been, what was the state of mind of the applicant at the time? State of mind is a fact to be established as any other fact is established, namely, by competent evidence relating thereto. Whether or not there was a misrepresentation could not be determined until that question as to state of mind was answered. If the applicant, for example, did not know of a defect which actually existed and had no belief that it existed, his negative answer—such as was given to question 12—could not be a misrepresentation.

On the other hand, if the applicant had knowledge of an existing defect but answered the question in the negative, he would be making a false representation of his state of mind which would also be a misrepresentation as to the existence of the particular defect. In this latter case the misrepresentation concerning the defect would become material and would give the insurer a defence—provided the existence of the defect contributed to the happening of the event upon which payment under the policy would otherwise become due.

Where a defence is rested upon charges of misrepresentation it is stating the obvious to say that the first requisite is proving the misrepresentation. And insofar as the answers to question 12 are concerned that involves showing the state of mind of the applicant.

The only positive direct evidence of state of mind came from the plaintiff himself. He testified that at the date of the application he knew of no mental or physical defect and that to the best of his knowledge and belief he was in sound condition, that his back had not bothered him for three or four years prior to the date of application and up to the time of the automobile accident, that prior to the date of the application he actively golfed, bowled, played ball and fished without any back trouble, that from the time he started playing golf and getting exercise he had no further trouble with his back. The evidence as to the old back injury and the years of intermittent pain was properly admitted because relevant to the issue of state of mind since the finder of fact might infer knowledge of present defect from the accumulation of historical

facts. No other evidence as to plaintiff's state of mind was submitted by defendant. It follows that if plaintiff made no misrepresentation as to his state of mind, his actual physical condition at the time of application was immaterial and would afford no defence to the insurer. If plaintiff misrepresented his state of mind as to his back condition—meaning that he had actual knowledge or belief of a defect or of unsound condition—then the misrepresentation was material and would give a defence insofar as injury to his back was concerned.

At this point we are confronted with an anomalous situation. The positive and uncontradicted testimony of the plaintiff and his medical practitioner shows that as a result of the automobile accident the plaintiff sustained injuries, not only to his back, but to the neck region—"the cervical plexus". The doctor found that there was evidence of marked muscle spasm, tenderness and pain in the neck, a decrease in the left biceps, triceps jerks, numbness in the left side of the face and left side of left hand, hence injury to the nerve root in the neck region and irritation of the fifth cranial nerve. He summarized by giving a diagnosis of whiplash injury with irritation of left cervical root. He stated further that the *neck* injury was sufficient to incapacitate plaintiff for the seven months initial period and also to incapacitate him from performing all the important functions of his occupation for the year following. Plaintiff seeks indemnity for both periods. In describing his neck injury, plaintiff stated that his neck would become so rigid that he could not move it, that he suffered severe headaches and severe pains between his shoulder blades for approximately two years, that he was required to wear a neck brace or collar up to "about six or seven months" before the trial in May, 1964, that the neck brace fitted tightly and held the neck rigid and so because of reduced flexibility interfered with plaintiff's facility in driving an automobile, that he had been placed in traction for treatment of the neck injury, that after plaintiff had made a part-time return to work in May, 1961, he was again hospitalized for about seven weeks and was again placed in traction, that prior to the automobile accident plaintiff had never had an injury to his neck. Defendant has directed no evidence toward a negativing of the neck injury or the resulting incapacitation.

Thus if plaintiff made no misrepresentation as to his state of mind there is no bar to his recovery for all the disability pleaded and shown. If plaintiff misrepresented his state of mind and a physical defect (back) existed to his knowledge at the time of application, then the misrepresentation would be material insofar as any disability was attributable to the back injury. But in the latter event the misrepresentation would not be material insofar as the neck injury was involved because it did not contribute to the incurring of the neck injury. Thus, in fact, we find that plaintiff suffered two injuries, one to the lumbar-sacral region and one to the cervical area. The injuries were separate and distinct and in no sense identical. In spite of the uncontradicted medical evidence of the neck injury, the instructions take no cognizance thereof.

Defendant's Instruction No. 5 to which plaintiff objected hypothesized the following background facts which plaintiff's own testimony had developed: the back injury of 1944, the consequent hospitalization, his retirement from the Army and receipt of retirement pay, the intermittent pain which he suffered for a period of about ten years, his application for the policy and questions 10 and 12 of the application and the answers thereto. The balance of the instruction is here broken down into numbered parts for ease of reference. (1) Next, the instruction hypothesized plaintiff's knowledge that the answers to questions 10 and 12 were untrue, without differentiation between them. (2) "and if you further find that had plaintiff disclosed his previous back complaint and medical treatment for said back complaint that the defendant

company would not have issued the policy", and (3) "if you further find that said pre-existing condition, dating from the injury of 1944 or 1945, caused or contributed to cause his disability, if any, as a result of an automobile accident on November 22, 1960, then you are instructed that your verdict should be in favor of the defendant".

 That part of the instruction designated above as (2) relates to the underwriting policy of the company. A considerable volume of testimony as to that policy of the defendant was taken. This testimony was largely irrelevant and certainly prejudicial. It is the privilege of the company to establish such policy relating to the issuance of its insurance contracts as it may desire. It is equally the privilege of the insurer to elicit from the applicant such detailed information concerning his life history as it may wish, all as a prelude to the issuance of the policy. Questions put to an applicant for insurance and his answers to the same serve as an aid in the implementation of its underwriting policy. If the questions put on an application do not fully develop the basis of an adopted underwriting policy, that is simply a matter of choice on the part of the company. A failure by an applicant to delineate a large part of his life history cannot be regarded as a concealment from the company if the company's questions do not call for the information which it regards as pertinent to its underwriting policy. In the instant case the applicant was not asked whether he had ever suffered any injury; his failure to volunteer information concerning matters about which he had not been asked does not amount to a misrepresentation or concealment simply because the company in furtherance of its underwriting policy might have declined to issue the policy if he had volunteered the unasked for information. Here the insurer in the exercise of its freedom of choice elected not to ask such a question concerning prior injury and no duty rested on plaintiff to talk about such a happen-

ing. The error in this part of the instruction is plain. The practically assured effect on the jury is evident.

 Plaintiff complains that that portion of the instruction labelled (3) above assumed a fact issue—that plaintiff had a pre-existing back condition dating from 1944 or 1945 which contributed to cause his disability. This portion of the instruction is ambiguous; it is susceptible of the interpretation that the back condition continued from 1944 or 1945 through the time of the application and contributed to the disability following the automobile accident, in which case the instruction would relate to the actual and continuing physical condition of plaintiff. In the alternative the instruction might be interpreted as stating that if the pre-existing back condition did actually exist at the time of the automobile accident and so contributed, verdict must be for defendant, although the continuance of the pre-existing condition might have been unknown to applicant. If the matter be considered in the light of the first mentioned possible interpretation, there is no direct evidence that at the time of the application the back condition still persisted and much that it did not. If the second possible interpretation be adopted the instruction does not hypothesize plaintiff's knowledge or belief as to such back condition at the time of the application. Nor is the uncertainty as to the meaning of the instruction cured by the previous part hypothesizing the falsity of the answers to question 12 and plaintiff's knowledge of such falsity. Nowhere does the instruction pinpoint a continuance of the back injury as the subject of plaintiff's known false answer. No finding is required that the answers were false because of a then known back defect or condition. But the ambiguity is sufficient ground for condemning this part of the instruction. However defendant maintains that "it was not necessary to the defense of misrepresentation that the misrepresented back condition existed at or shortly before the execution of the policy

application". We do not agree. Misrepresentation does not exist in vacuo. A representation relates to a past or present fact. The future involves either promise or prophecy. In the present case the only pertinent representations related to the then existing present: "To the best of your knowledge and belief (a) *Are* you in sound condition" etc.? (b) *"Have* you any . . defect" etc.? By such questions, plaintiff was not asked about, and consequently made no representations concerning, past facts.—His only representation was as to his then present state of mind. The crucial moment for determining whether a misrepresentation had been made is as of the moment of making the representation.

▉ Plaintiff's brief continues his complaint in the following language:

"While the instruction requires findings that plaintiff sustained an injury to his back in 1944 or 1945 it does not submit to the jury the nature or extent of the injury, or the fact of pain or disability after 1954 or 1955, or the continuance of any symptoms, defect or condition after those dates . . . The . . . evidence clearly placed in issue plaintiff's physical condition from and after 1954 and 1955 and the assumption of the fact that the condition of 1944 or 1945 continued after that date in Instruction 5 was prejudicial error, entitling plaintiff to a new trial".

This contention of the plaintiff rests in part upon these facts: Defendant placed in evidence the Veterans Administration record relating to plaintiff's service injury, the initial diagnosis, an interim diagnosis and the final discharge diagnosis, all in 1945. Plaintiff's medical practitioner, whose specialty is "diseases of the nervous system and the nerves and spinal cord", testified as to his initial and his continuing attendance upon plaintiff after the automobile accident and his analysis of the latter's physical condition. His diagnosis on the whole showed little if any identity of

injuries with those recorded in the diagnosis preserved in the Veterans Administration record. Plaintiff draws attention to "the distinction drawn between the injury which the plaintiff presently had and the injury he previously had".

Bearing in mind that any misrepresentation made by plaintiff would be as to his state of mind and that state of mind might be inferred from an accumulation of facts known to him, the significance of the distinction to which plaintiff draws attention is apparent. If there is lack of identity between the injuries suffered in 1944 and those existing after the automobile accident, such evidence would tend to support plaintiff's contention that, in 1958, to the best of his knowledge and belief he did not have a physical defect and was in sound condition. Perhaps more importantly, such lack of identity would be highly pertinent to the issue of whether a misrepresentation, if there were one, related to a matter which actually contributed to the contingency on which payment was due under the policy.

While the statute, Section 376.580, makes the question of whether the matter of a misrepresentation contributed to the contingency a question for the jury, yet the general rule regarding submissibility still prevails. As was stated in Kirk v. Metropolitan Life Insurance Co., 336 Mo. 765, 81 S.W.2d .333, 344, "Yet the power remains in the court to determine whether there is any evidence which authorizes submission of the case to the jury. * * * We are of opinion that in this case the evidence did not justify submission of the case to the jury". This position of the Supreme Court as to submissibility was reiterated in Winger v. General American Life Ins. Co., Mo., 345 S.W.2d 170, 182: "Of course the power remains in the court to determine whether there is any evidence which authorizes submission of the case to the jury."

For the reasons stated judgment must be reversed and the case remanded.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is reversed and the case remanded.

WOLFE, P. J., and ANDERSON and, RUDDY, JJ., concur.