**Larry FARLEY and Ethel Farley, Plaintiffs–Appellants,**

v.

**ST. CHARLES INSURANCE AGENCY, INC., and Fireman's Insurance Company of Newark, New Jersey, Defendants–Respondents.**

No. 58188.

Missouri Court of Appeals, Eastern District, Division Four.

April 9, 1991.

Donald V. Nangle, Michael Donatt, St. Louis, for plaintiffs-appellants.

Lawrence Bovard Grebel, Kathleen Buckley, St. Louis, for defendants-respondents.

SATZ, Judge.

This is a declaratory judgment action. Plaintiffs, Larry Farley and Ethel Farley, husband and wife, seek a declaration that the loss of their home by fire is covered by a homeowners insurance policy obtained from defendants, St. Charles Insurance Agency, Inc. (St. Charles) and Fireman's Insurance Company of Newark, New Jersey (Fireman's). Defendants counter with the affirmative defense of fraud. The trial court denied plaintiffs' motion for summary judgment and granted defendants' joint motion for summary judgment. Plaintiffs appeal. We affirm.

Once again, we are faced with an imprecise record of the evidence submitted by the parties in support of their respective summary judgments. Repeatedly, attorneys have elected to live dangerously by relying on this type of record. *See, e.g. Johnson v. Johnson,* 764 S.W.2d 711, 713 (Mo.App.1989); *Hill v. Air Shields, Inc.,* 721 S.W.2d 112, 116 (Mo.App.1986). We take the record as we find it. From plaintiffs' 143 page Legal File and defendants' 321 page Legal File, we glean those facts which are essential to this opinion and, unless otherwise noted, which do not appear to be in dispute.

Plaintiffs first obtained homeowners insurance from defendants after they purchased the home from the estate of Mr. Farley's mother, Mrs. Elise Farley. For several years prior to her death, Elise Farley had purchased homeowners insurance on the home from the defendants. The annual expiration date of these policies was November 27. Elise Farley died in March 1985. The November 27, 1985 expiration date passed, but the policy was not renewed at that time.

Apparently, sometime in February 1986, plaintiffs completed the purchase of the home. On March 13, 1986, about 113 days after the November 1985 expiration date, plaintiffs paid the annual premium, and the policy was reinstated with coverage backdated to November 27, 1985.

The plaintiffs allowed their policy to lapse again on November 27, 1986. About 46 days later, on January 12, 1987, plaintiffs paid the annual premium, and the policy again was reinstated with coverage backdated to November 27, 1986.

Then, on November 27, 1987, plaintiffs allowed their policy to lapse a third time. Their home and its contents were destroyed by fire in the early morning of January 8, 1988. Later that morning, Mr. Farley, accompanied by his sister-in-law, came to the office of defendant St. Charles to inquire about insurance coverage. What followed next at this meeting is in dispute.

According to Mr. Farley, he asked whether his premium had been paid; he was told it had not been paid; and he paid his premium by check. He did not mention his fire loss, he said, because he "was in shock" and his sister-in-law had "advised [him] to see an attorney."

According to his sister-in-law, an employee of the agency, a Ms. Julie Wilhelm, told Mr. Farley his policy would be "reinstated, with no lapse" if he paid his "premium in full" that day. The sister-in-law said she also asked: "If something would have happened, say a week ago, would [Mr. Farley] have been covered," and Ms. Wilhelm replied: "Yes, absolutely," just as if "there had never been any lapse in coverage."

Defendants' evidence of this meeting contradicts plaintiffs' evidence. According to Ms. Wilhelm, Mr. Farley asked whether his policy could be reinstated and backdated to November 27, 1987. She told him, she said, that this was possible only if the backdating was approved by the underwriter from Fireman's. Mr. Farley agreed to tender full payment and assured Ms. Wilhelm that there had been no losses on the property during the lapse period. Ms. Wilhelm noted this fact on the forms sent to Fireman's to have the coverage reinstated.

In its grant of summary judgment, the court acknowledged this factual dispute between the parties: did the insurer ask Mr. Farley whether he had suffered any loss and did Mr. Farley say he had not? How-

ever, the court said this dispute of fact is irrelevant. Mr. Farley had a duty to disclose his loss, the court said, and his failure to do so constituted fraud, which permitted defendants to avoid the policy.

Plaintiffs challenge the court's judgment on several grounds. Most, if not all, of these challenges are based on the premise that defendants' established practice of accepting late premium payments and reinstating the lapsed policy precluded them from avoiding the policy without prior notice to plaintiffs that a punctual payment was an essential prerequisite to the continuation of the policy. On the present facts, we disagree.

■ We have no quarrel with the general principle on which plaintiffs rely. Based on the doctrines of waiver or estoppel, an insurer's prior conduct may preclude the insurer from denying coverage. More specifically relevant here, our courts had repeatedly said:

> Where an insurer has uniformly accepted payments of premiums after the due date, inducing a reliance on the part of the insured, it is estopped to declare a forfeiture of the coverage because the payment was not promptly made without first notifying the insured of its intention to insist on punctuality. *Armour v. Cameron Mut. Ins. Co.*, 770 S.W.2d 464, 466 (Mo.App.1989), and cases collected therein.

■ This is a sound principle. It is based upon simple fairness and is implemented by the doctrines of waiver or estoppel. Thus, in the present case, absent fraud, defendants could not have denied coverage for a lapsed period once it had established the custom of accepting late premium payments and backdating the coverage period. For example, if plaintiffs had been away from home when the fire occurred and, being ignorant of this fact, had paid the late premium, then, defendants may well have been precluded, by waiver or estoppel, from denying coverage during the lapsed period.

■ On those facts, fairness would not prevent plaintiffs from invoking the doc-

trine of waiver or estoppel. Plaintiffs could not "reasonably be held to have concealed a fact of which [they] had no knowledge, ..., actual or presumed, or one which it cannot be said the [they] ought to have known...." 9 Couch, *Insurance* § 38:14 at 381 (2d ed.1985). And, it is possible to make an insurance policy retroactive in coverage, if bargained for in good faith. 9 Couch, § 39.87; 4 Appleman, *Insurance Law and Practice* § 2291 (1981).

But, plaintiffs here knew of their fire loss, and, thus, the issue here is whether we should allow plaintiffs, knowing of their fire loss, to invoke the doctrine of waiver or estoppel. We think not.

■ Plaintiffs cannot, and tacitly do not, contend the fire loss was not a fact "material" to the policy. A misrepresentation of fact is material, if the fact, stated truthfully, might reasonably have influenced the insurer to accept or reject the risk or to have charged a different premium. *Weekly v. Missouri Property Ins. Placement Co.*, 538 S.W.2d 375, 378 (Mo.App.1976). Obviously, at the inception of the contractual relationship here, defendants would not have issued a policy had they known plaintiffs had already suffered their fire loss. Thus, if plaintiffs had suffered their fire loss then, they would have been required by honesty, good faith and fair dealing, the doctrine of *uberrima fides*, to disclose this material fact to defendants. 9 Couch, *supra*, §§ 38:1–38:7, 38:13–14, 38:25–38:56; 12A Appleman, *supra*, §§ 7271–7276 (1981). Plaintiffs' violation of their duty to disclose at that time, would, in many jurisdictions, imply deceit and fraud, which, in turn, would have vitiated the policy, making it either void or voidable. *See, e.g., Aetna Casualty & Surety Co. v. Condict*, 417 F.Supp. 63, 71 (S.D.Miss.1976); *Presley v. Nat'l Flood Insurers Assoc.*, 399 F.Supp. 1242, 1244–45 (E.D.Mo.1975); *Matlock v. Hollis*, 153 Kan. 227, 109 P.2d 119, 124–25 (1941); 9 Couch, *supra* and 12A *Appleman, supra; see also, Miller v. Higgins*, 452 S.W.2d 121, 124 (Mo.1970).

■ Admittedly, on occasion, our courts in Missouri have made the general state-

ment that an insured is under no duty to disclose information not requested by the insurer. *See, e.g. Bohm v. Fidelity Cas. Co. of New York*, 399 S.W.2d 450, 455 (Mo.App.1966). But, the factual context in which that statement is made is distinguishable from the present facts.

In *Bohm*, for example, the plaintiff failed to disclose a back injury he had suffered about 14 years before applying for an accident and disability income policy. After obtaining the policy, plaintiff injured his back and neck in an automobile accident. The defendant insurance company refused to make any payments under the policy, alleging the plaintiff misrepresented or concealed his back injury, a material fact.

This Court held the misrepresentation about plaintiff's earlier back injury was not material with regards to plaintiff's later neck injury, under a statute not relevant to the instant case. *Id.* at 454. The Court said the plaintiff's failure to volunteer information did not amount to concealment simply because the insurer might have declined the risk had plaintiff so volunteered. The insurer, the Court said, was free to set its underwriting policies and to elicit through questions to the applicant the information necessary to make its policies effective, but the Court imposed no duty on applicants to speculate as to what information the insurer might consider important. *Id.* at 455.

This simply is recognition that the practice of requiring an applicant to answer questions has relaxed to some extent the rule rendering a policy voidable or void on the insured's failure to disclose a known condition affecting the risk. 12A *Appleman, supra* at 327. This practice, however, has not relaxed the rule to the extent that applicants are permitted to conceal the prior destruction of the subject matter of the insurance contract, or the prior occurrence of the event to be insured against.

Insurance policies protect against risks, not accomplished facts. An applicant for an insurance policy implicitly asserts that the subject matter of the policy is still in existence. The insurer is entitled to rely on that assertion. Thus, if an applicant failed to disclose a fire loss prior to the inception of the policy, we would hold that to be a material fact which the applicant had a duty to disclose, and his failure to do so would constitute concealment and, thus, fraud. *See Miller v. Higgins, supra.*

Plaintiffs ask us, however, to forgive the same conduct here, because, they contend, they had the right to rely on defendants' past conduct and, therefore, they should be permitted to invoke the doctrine of waiver or estoppel. We will not do so. Waiver and estoppel are equitable doctrines devised to prevent a wrong being done to an innocent party. *See, e.g., Block v. Block*, 593 S.W.2d, 584, 590 (Mo.App. 1979). Plaintiffs here are not innocent of any wrong. Therefore, we will not permit them to invoke either waiver or estoppel. To do so would condone and invite fraud. This we will not do.

Judgment affirmed.

SMITH, P.J., and CARL R. GAERTNER, J., concur.