

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| ROSLYN T. BARNES, | ) | |
| | ) | |
| Appellant, | ) | WD85464 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | OCTOBER 10, 2023 |
| ATHENE ANNUITY & LIFE | ) | |
| ASSURANCE COMPANY F/K/A | ) | |
| LIBERTY LIFE INSURANCE F/K/A | ) | |
| BUSINESS MEN'S ASSURANCE | ) | |
| COMPANY OF AMERICA, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Patrick William Campbell, Judge

Before Division Four: Gary D. Witt, Chief Judge, Presiding Cynthia L. Martin, Judge
and Chad Gaddie, Special Judge

Roslyn T. Barnes ("Barnes") appeals the judgment of the Circuit Court of Jackson

County, Missouri ("trial court") granting summary judgment to Athene Annuity & Life

Assurance Company ("Athene") in her civil case for damages arising out of her exposure

to asbestos while she worked for Athene's predecessor in the 1970s and her subsequent

diagnosis of mesothelioma. On appeal, Barnes alleges that the trial court erred in granting

Athene's motion for summary judgment in that there is a genuine issue of material fact as to whether Athene had a valid policy of workers' compensation insurance with enhanced mesothelioma benefits in effect at the time Barnes filed her workers' compensation claim, making workers' compensation benefits her exclusive remedy. Barnes also moves this court for sanctions against Athene for committing fraud on the Court. We reverse the judgment of the trial court and remand the case, including the motion for sanctions, for further proceedings consistent with this opinion.

## Factual and Procedural Background[1]

Barnes began working for Business Men's Assurance Company of America ("BMA") in 1976 and worked there until 1980. While Barnes worked for BMA, there were frequently workers overhead in the ceiling, and asbestos-containing dust would come down into the employees' work areas, including Barnes's. Barnes would frequently have to clean the dust off of her computer. Barnes was diagnosed with asbestos-related disease, including mesothelioma, on July 25, 2019. She filed a workers' compensation claim against Athene, BMA's successor, on October 17, 2019. Barnes then filed a civil lawsuit based on her asbestos-related disease against Athene and others in the trial court on February 5, 2020. In its answer, Athene raised as an affirmative defense that it had elected to provide mesothelioma coverage through a policy of workers' compensation insurance

---

[1] We view the record in the light most favorable to Barnes. *May & May Trucking, L.L.C. v. Progressive Northwestern Ins. Co.*, 429 S.W.3d 511, 514 (Mo. App. W.D. 2014).

pursuant to section 287.200.4[2], and therefore the exclusive remedy for Barnes's injury was pursuant to the Missouri Workers' Compensation Law.

Section 287.200.4 provides that an employer may elect to have claims of work-related mesothelioma illness made by employees against an employer to be covered by the exclusivity provisions of the Workers' Compensation Law by purchasing workers' compensation insurance with specific coverage for these types of claims. Pursuant to the statute, absent an employer making this election, the exclusivity provisions of the Workers' Compensation Law are inapplicable to the claim, and a civil remedy is available. Athene filed a motion for summary judgment in the civil suit, asserting that it elected to have mesothelioma claims limited to the exclusivity provisions of the Workers' Compensation Law by purchasing a workers' compensation insurance policy with enhanced mesothelioma coverage pursuant to section 287.200.4, making the Workers' Compensation Law the exclusive remedy for Barnes's claim. Athene attached to its motion a workers' compensation insurance policy effective from October 2, 2018, to October 2, 2019. Barnes opposed the motion for summary judgment, pointing out that the relevant date for insurance coverage purposes was the date she filed her workers' compensation claim, October 17, 2019. Athene responded that it had a policy in effect on October 17, 2019 (although it did not produce a copy of the policy); it also maintained that the relevant date for coverage for purposes of establishing exclusivity was the date of Barnes's diagnosis, July 25, 2019, rather than the date the workers' compensation claim was filed.

---

[2] All statutory references are to the Revised Statutes of Missouri (2016) as updated by supplement unless otherwise indicated.

3

The trial court denied the first motion for summary judgment, finding that there was a genuine issue of material fact as to whether Athene had a workers' compensation insurance policy including enhanced mesothelioma benefits in effect on the date that Barnes filed her workers' compensation claim, October 17, 2019.

On May 19, 2021, Athene filed a second motion for summary judgment, which it subsequently withdrew. Finally, on December 16, 2021, Athene filed a new "Second Motion for Summary Judgment." To this motion and its accompanying statement of uncontroverted facts Athene again attached the workers' compensation insurance policy effective October 2, 2018, to October 2, 2019. Athene also attached a document it represented to be a workers' compensation policy issued on November 12, 2019, with effective dates of October 2, 2019, to October 2, 2020 (hereinafter "2019/2020 policy"), and a document represented to be an insurance binder, dated October 4, 2019, which Athene maintained bound workers' compensation insurance coverage, including enhanced mesothelioma coverage, for sixty days from that date. The admissibility and authenticity of the 2019/2020 policy and the insurance binder were supported by an affidavit from Jeremy Ballew, an employee of Marsh USA, Athene's insurance broker. Athene also attached to its Second Motion for Summary Judgment an e-mail exchange between Ballew and Michael Robles, an employee of Athene, and deposition testimony from Robles.

Robles, per his deposition testimony, stated that he did not know when Athene received the 2019/2020 policy issued on November 12, 2019. He also identified no documents establishing that Athene had submitted an application for renewal of the workers' compensation policy. The e-mail exchange addressed the insurance binder as follows:

4

[On October 4, 2019, Robles emailed to Ballew]
Jeremy—please proceed with binding AHL's P&C insurance program as detailed in the attachment above (excluding the 3rd excess layer which was previously bound). In addition, as mentioned today, we would like to discuss the benchmarking info. in the attachment above during next week's call. Let me know if you have any questions on these matters. Thanks.
[No attachment was provided at the deposition, and no attachment is included in the summary judgment record or the record on appeal]

[On October 4, 2019, Ballew emailed to Robles]
Hello Michael,
Thank you for confirming. We will proceed with instructing carriers accordingly and will finalize the certificates of insurance for delivery. Per our earlier conversation, we will invoice all lines of coverage for full pay at inception. Let me know if you would prefer to set up financing instead.
We will discuss the benchmarking and other open items next week.
Thank you again.

Robles was asked at his deposition what benchmarking referred to in the e-mail. He answered:

A: Comparisons of coverage for similarly situated entities.

Q: Oh, so you were still in the process of, October 4, 2019, discussing coverages with other insurance companies, correct?

A: No, I don't think that's correct.

Q: Well, didn't you just say, "In addition, as mentioned today, we would like to discuss the benchmarking info?"
You're talking about pricing with other insurance companies, aren't you?

A: I don't recall.

Q: Well, didn't you just tell us what the definition of "benchmarking" was—

A: I did, but we have—

Q: --a comparison with other insurance companies and coverages?

A: I did.
* * *

5

Q: So you're still discussing it as of the date of this e-mail, October 4th, 2019, correct?

A: Without seeing the attachment, I just can't guess what the benchmarking related to. We have a number of coverages, not just P&C, in our corporate program.
Q: Now wait a minute. You talked about "in the attachment above during next week's call."
The attachment is this chart that starts on the next-to-the-last page and continues to the last page, correct?

A: That's not the attachment. I don't see the attachment. I'm not seeing an attachment.
Q: Well, where is the attachment?

A: I don't know.

Athene's Second Motion for Summary Judgment did not include any statements of uncontroverted fact supported by affidavit or authenticated communications from Chubb, the insurer, confirming that Chubb agreed the 2019/2020 policy was in effect on October 17, 2019, or that Barnes's workers' compensation claim was covered by insurance through their company.

After significant delays, Athene assisted in securing Ballew's attendance for Barnes to take his deposition on May 3, 2022. Ballew testified that he worked for Marsh USA, an insurance broker, and had never worked for Chubb, the insurer. Ballew did not create the 2019/2020 policy or the insurance binder, nor did he have any knowledge of who created the documents or when. Ballew did not deliver the 2019/2020 policy to Athene; rather, Chubb, the insurer, provided it directly to Athene on November 12, 2019. Ballew had no knowledge of whether Athene had paid a premium for the 2019/2020 policy, and he had not seen any invoices for the 2019/2020 policy. Additionally, Ballew testified about an "E-mail [he] sent on November 18th, 2019, 9:29 A.M." The e-mail said that he had received

6

the "soft copy" "of the WC policy." Ballew testified that the soft copy was not typically the same version as what was sent by Chubb to the insured. The e-mail continued, "We will conduct our internal policy check and confirm accuracy once we have received the formal issuance." Based largely on Ballew's testimony, Barnes's response to Athene's Second Motion for Summary Judgment challenged the legal sufficiency of Ballew's affidavit to support admissibility of the 2019/2020 policy and binder. Barnes's response also highlighted the omission of properly authenticated records or affidavits from Chubb, the insurer, which could easily have confirmed that workers' compensation coverage including enhanced mesothelioma benefits was in effect on October 17, 2019. Barnes thus contended that a genuine issue of material fact remained in dispute to establish the affirmative defense of exclusivity of remedy pursuant to the Workers' Compensation Law.

The trial court granted Athene's Second Motion for Summary Judgment, finding that "the insurance policies submitted to the Court specifically provide coverage for enhanced mesothelioma benefits pursuant to [section] 287.200.4 of the Missouri Workers' Compensation Law, triggering the Law's exclusive remedy provision." The trial court found the coverage to be in effect on October 17, 2019. The trial court found that Ballew's affidavit was sufficient to authenticate the 2019/2020 policy and the binder because he had "personal knowledge of the insurance policies from his role as Athene's insurance agent." Barnes appeals and asks this court to reverse the judgment and moves this court for sanctions against Athene, arguing that Athene has committed fraud upon this Court.

7

## Standard of Review

We review the grant of summary judgment *de novo. May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 514 (Mo. App. W.D. 2014). We view the record in the light most favorable to the non-moving party, giving all favorable inferences in favor of the non-movant. *Id.*

## Summary Judgment

Summary judgment is appropriate when a party establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Jungmeyer v. City of Eldon*, 472 S.W.3d 202, 205 (Mo. App. W.D. 2015). The basis of Athene's motion for summary judgment is its own affirmative defense, on which it bore the burden of proof. "For summary judgment to be granted to a defendant on the basis of an affirmative defense, the movant must establish that there is no genuine dispute as to the existence of *each* of the facts necessary to support movant's properly-pleaded [sic] affirmative defense." *Ditto, Inc. v. Davids*, 457 S.W.3d 1, 14-15 (Mo. App. W.D. 2014). "[A]n affirmative defense is asserted by the *pleading of additional facts* not necessary to support a plaintiff's case which serve to avoid the defendants' legal responsibility even though plaintiff['s] allegations are sustained by the evidence." *Id.* at 15. "Facts asserted in affidavits or otherwise in support of a party's motion are taken as true unless contradicted by the nonmovant's response to the summary judgment motion." *May & May Trucking*, 429 S.W.3d at 514 (internal quotation omitted). "Affidavits must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* at 515 (alterations

8

omitted). "If an affidavit does not show a basis for personal knowledge, it is considered hearsay and is invalid." *Id.* " A legal conclusion brandished as a statement of fact must be disregarded in evaluating a motion for summary judgment, even if that statement is admitted by non-movant." *Metro. Nat'l Bank v. Commonwealth Land Title Ins. Co.*, 456 S.W.3d 61, 66 (Mo. App. S.D. 2015) (internal citation omitted).

Our Supreme Court has made clear that an employer wishing to avail itself of the protections of section 287.200[3] must take an affirmative act to elect to accept enhanced liability for mesothelioma benefits under the Workers' Compensation Act. *Hegger v. Valley Farm Dairy Co.*, 596 S.W.3d 128, 133 (Mo banc 2020). If an employer does not affirmatively elect to come within the provisions of the statute then the exclusive remedy provisions of the Workers' Compensation Law do not apply, and the employer may be

---

[3] Section 287.200.4(3)(a) provides:
For employers that have elected to accept mesothelioma liability under this subsection, an additional amount of three hundred percent of the state's average weekly wage for two hundred twelve weeks shall be paid by the employer or group of employers such employer is a member of. Employers that elect to accept mesothelioma liability under this subsection may do so by either insuring their liability, by qualifying as a self-insurer, or by becoming a member of a group insurance pool. A group of employers may enter into an agreement to pool their liabilities under this subsection. If such group is joined, individual members shall not be required to qualify as individual self-insurers. Such group shall comply with section 287.223. In order for an employer to make such an election, the employer shall provide the department with notice of such an election in a manner established by the department. The provisions of this paragraph shall expire on December 31, 2038[.]
We find that employers "insuring their liability" means that the employers have in place valid insurance coverage for the employee's mesothelioma-related injuries, not just a policy that may or may not cover the employee's injury. This distinction is important because it not only determines who, as between the employer and the workers' compensation insurer, is responsible for the workers' compensation damages related to the employee's injuries, but also determines the employee's available remedies and whether she is limited to the recovery provided under the Workers' Compensation Law or can bring a civil action for damages.

9

subject to civil liability.  *Id.* at 131.  Barnes claims that the trial court erred in granting Athene's Second Motion for Summary Judgment because there is a genuine issue of material fact as to whether Athene had in place a valid workers' compensation insurance policy with enhanced mesothelioma benefits, i.e. coverage for her injury, on October 17, 2019, the date Barnes filed her workers' compensation claim.[4]

Athene attached the 2019/2020 policy and an insurance binder to its Second Motion for Summary Judgment and argued that both were authenticated documents establishing coverage in effect as of October 17, 2019, based on the affidavit of Ballew.  Rule 74.04(e) provides that affidavits in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.[5] Though Ballew's affidavit purported to authenticate the 2019/2020 policy, Ballew admitted in his deposition he had not seen or delivered the 2019/2020 policy to Athene, and that a "soft" policy he received as the insurance broker was likely different from the 2019/2020 insurance policy.  By his own testimony, Ballew did not have personal knowledge sufficient to authenticate the 2019/2020 policy.  It was erroneous for the trial court to

---

[4] On appeal, Athene argues, as it did in connection with its first motion for summary judgment, that operative date for coverage as to support the affirmative defense of exclusivity is July 25, 2019, the date of Barnes's diagnosis, and not October 17, 2019, the date that Barnes filed her workers' compensation claim.  In denying Athene's first motion for summary judgment, the trial court correctly rejected Athene's argument.  The Missouri Supreme Court clearly foreclosed Athene's position in *Accident Fund Insurance Company v. Casey*, 550 S.W.3d 76 (Mo. banc 2018).  In *Casey*, the Supreme Court was aware of the employee's last date of exposure to asbestos, the date of his mesothelioma diagnosis, and the date he filed his claim.  *Id.* at 78-79.  The Court looked to the language in section 287.200.4, which speaks to when the claim was filed to determine whether there was coverage for the occupational disease on that date.  *Id.* at 79.  "The triggering occurrence—the event commencing liability coverage—is the filing of a claim." *Id.* at 80.  *Casey* is well-reasoned, and we are bound to follow it.

[5] Unless otherwise indicated, all rule references are to the Missouri Court Rules (2023).

conclude that Ballew's affidavit was sufficient to satisfy the requirements of Rule 74.04(e) with respect to the 2019/2020 policy. *Jungmeyer*, 472 S.W.3d at 205-06 ("Rule 74.04 specifically requires that any [affidavits supporting a motion for summary judgment] shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

Moreover, even if Ballew had personal knowledge regarding the 2019/2020 policy (which he admits he did not), that policy was not issued until November 12, 2019, *after* Barnes filed her workers' compensation claim. No application for the 2019/2020 insurance policy was made a part of the summary judgment record. The record is silent with respect to whether Barnes's pending workers' compensation claim was disclosed to Chubb prior to the policy being issued, creating a legal question on the issue of valid coverage, notwithstanding that the 2019/2020 policy purports on its face to be effective from October 2, 2019 to October 2, 2020. *See Farley v. St. Charles Ins. Agency*, 807 S.W.2d 168, 171 (Mo. App. E.D. 1991) ("Insurance policies protect against risks, not accomplished facts."). In the absence of any confirmation from Chubb that the 2019/2020 policy issued to Athene on November 12, 2019, in fact provided Athene with workers' compensation coverage with extended mesothelioma benefits for Barnes's workers' compensation claim filed on October 17, 2019, there were insufficient uncontroverted facts in the record to permit the trial court to conclude, as a matter of law, that Athene had coverage sufficient to establish

11

the affirmative defense of exclusivity.[6] *Green v. Fotoohighiam*, 606 S.W.3d 113 (Mo. banc 2020) (holding that a court must determine whether uncontroverted facts demonstrate a movant's right to judgment as a matter of law).

Finally, Ballew's lack of personal knowledge regarding the 2019/2020 policy attached to his affidavit is not overcome by reliance on section 490.680 relating to the admissibility of business records. Section 490.680 provides:

> A record of an act, condition[,] or event[] shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of preparation, and if it was made in the regular course of business, at or near the time of the act, condition[,] or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Ballew admits he never received the 2019/2020 policy, and his affidavit makes no assertion that the 2019/2020 policy was maintained by Marsh in the regular course of its business. Even if such an assertion had been made, "a document that is prepared by one business cannot qualify for the business records exception merely based on another business's records custodian testifying that it appears in the files of the business that did not create the record." *CACH, LLC v. Askew*, 358 S.W.3d 58, 63 (Mo. banc 2012).

Perhaps anticipating concerns with respect to establishing the authenticity of the 2019/2020 policy based on Ballew's affidavit, Athene also attached the binder to its Second

---

[6] At oral argument Athene argued that if the insurance policy was in place but coverage was denied by the insurance company that Athene would just be required to pay the workers' compensation benefits itself as opposed to its insurer. However, the requirement under the statute of workers' compensation coverage for extended mesothelioma benefits on the date the workers' compensation claim is filed does not just determine who may be required to pay any subsequent award of compensation, it determines whether the employee is limited to the benefits provided under the Workers' Compensation Law or whether the employer can proceed with a civil action against the employer.

12

Motion for Summary Judgment and argued it assured coverage for the 60-day binder period (which included October 17, 2019) regardless of the date the 2019/2020 policy was issued. Though the binder's authenticity is purportedly established by Ballew's affidavit, the binder cover page is addressed to Justine Lombardo of Marsh. Ballew's affidavit, which stated that Chubb sent him the binder on October 4, 2019, is facially inconsistent with the binder. Moreover, although Ballew's affidavit states that the binder was kept by Marsh in the regular course of its business, we have already explained that a document that is prepared by one business cannot qualify for the business records exception merely because it appears in the files of a business that did not create the record. *CACH, LLC*, 358 S.W.3d at 63.

The issues with authenticity of the 2019/2020 policy and the binder, coupled with the e-mail exchanges between Robles and Ballew and Ballew's deposition testimony, highlight additional concerns as the summary judgment record does not independently establish Athene *accepted* the binder or paid the premium required to activate the 2019/2020 policy. The e-mail exchange between Robles and Ballew does not indicate that Athene had accepted the renewal of the policies. Although Robles e-mailed Ballew to "please proceed with binding [Athene's] P&C insurance program as detailed in the attachment above," the referenced attachment is not in the summary judgment record or in the record on appeal. Further, Robles continued, "In addition, as mentioned today, we would like to discuss the benchmarking info. in the attachment above during next week's call." Robles testified in his deposition that "benchmarking" referred to "[c]omparisons of coverage for similarly situated entities." In other words, the evidence supports that Athene may have still been shopping potential insurers for coverage. Barnes also noted that Athene had not produced

13

any certificates of insurance and questioned whether Athene had paid any premiums under the "renewal" policy. While at oral argument Athene's counsel dismissed these as bare allegations or questions, it was Athene's burden to show, as per the statute, that it had insured its liability, i.e. that it had valid enhanced mesothelioma workers' compensation coverage in effect for Barnes's injuries at the time she filed her workers' compensation claim. Barnes could properly contest Athene's defense of coverage by highlighting that the uncontroverted facts do not support the grant of summary judgment as a matter of law, particularly where (as here) the documents purporting to establish coverage were not properly authenticated, and are not self-proving on the critical issue of coverage given the email exchanges between Robles and Ballew and the deposition testimony from Ballew. This record does not conclusively establish that Athene had valid workers' compensation insurance coverage in place for enhanced mesothelioma benefits on the date Barnes filed her workers' compensation claim. For these reasons, we conclude that there are genuine issues of material facts in dispute that prevented the trial court from concluding, as a matter of law, that Athene had sustained its burden to establish the affirmative defense of exclusivity of remedy under the Workers' Compensation Law. Barnes's point on appeal is granted.

## Motion for Sanctions

Taken with the case is Barnes's motion for sanctions. Barnes moves this Court for sanctions due to Athene's alleged "fraud" on this Court, the trial court, and the Division of Workers' Compensation. Barnes argues that Athene, who continues to maintain in this appeal that there is *no genuine dispute* that it had valid workers' compensation insurance

14

with enhanced mesothelioma coverage on the date Barnes filed her claim, apparently conceded before the administrative law judge that it did not. At argument, Athene stated that even if the administrative law judge determined that the coverage was not valid, Athene would then merely be required to pay Barnes the workers compensation benefits out of its own pocket rather than from its insurance carrier. However, as previously addressed in this opinion, the existence of valid coverage under the Workers Compensation Law does not merely establish the source of funds to pay a claim, it also determines Barnes's ability to proceed with a civil action for damages in the first instance.

Because this matter is reversed and remanded to the trial court, which is in a better position to address the factual issues raised herein and determine if the facts as may be proven support an award of sanctions, we remand Barnes's motion for sanctions with the case to allow the trial court to fully evaluate whether Athene's alleged actions justify the imposition of sanctions and what appropriate sanctions may be if they are to be imposed.

## Conclusion

The trial court's grant of summary judgment in favor of Athene is reversed and this matter and the motion for sanctions are remanded to the trial court for further proceedings consistent with this opinion.

_____
Gary D. Witt, Judge

All concur