215 S.W.3d 76 (2007)
STATE of Missouri ex rel. RIVERSIDE PIPELINE COMPANY, L.P., Mid-Kansas Partnership, and Missouri Gas Energy, Respondents,
v.
PUBLIC SERVICE COMMISSION OF the STATE of Missouri, Appellant.
No. SC 87495.
Supreme Court of Missouri, En Banc.
January 30, 2007.
*77 Thomas R. Schwarz, Jefferson City, for Appellant.
Richard M. Paul, III, Gregory L. Musil, Kansas City, Charles B. Stewart, Columbus, Brian T. McCartney, Gary W. Duffy, Jefferson City, for Respondents.
STEPHEN N. LIMBAUGH, JR., Judge.
This appeal is the continuation of a complicated jurisdictional dispute pertaining to the right to obtain judicial review from decisions of the Public Service Commission (PSC) and the procedures therefor. In particular, the PSC asks this Court to reconsider its earlier, unanimous holding in this same case as set out in State ex rel. Riverside Pipeline Co., L.P., et al. v. Pub. Serv. Comm'n, 165 S.W.3d 152 (Mo. banc 2005) (Riverside I). This Court introduced the case in Riverside I as follows:
Following a decision by the Public Service Commission (PSC), Riverside Pipeline Co. (Riverside) and Mid-Kansas Partnership (MKP) filed a petition for a writ of review in the Cole County Circuit Court. The circuit court reversed the PSC's decision, and the PSC appealed the judgment to the Court of Appeals, Western District. The court of appeals dismissed the appeal for lack of jurisdiction, and this Court granted transfer. Mo. Const. art. V, sec. 10. *78 Having now determined that jurisdiction was proper in the court of appeals, the case is retransferred to that court for consideration of the merits of the appeal.
Although this Court retransferred the case, the court of appeals again dismissed the appeal for lack of jurisdiction, and again, this Court granted transfer. The Court now reaffirms its holding in Riverside I on the appellate jurisdiction of the appeal and affirms the judgment of the circuit court on the merits of the appeal.
The facts and procedural posture of the case as set out in Riverside I require repetition here:
Riverside and MKP contracted with Missouri Gas Energy (MGE) to supply and transport natural gas to MGE's distribution system serving Kansas City, Missouri. MGE is a utility subject to the jurisdiction of the PSC. Natural gas distribution companies such as MGE are allowed to recoup approved costs for obtaining natural gas from their suppliers as part of the rate they charge their customers. Periodically, the PSC conducts an Actual Cost Adjustment (ACA) review to determine what costs public utilities are allowed to recover from their customers. As part of this effort, the PSC staff conducts a "prudence review" to evaluate the utility's contracts with its suppliers. The staff then decides whether the costs associated with the contracts should be disallowed in whole or part.
In May of 1996, after a recently completed ACA review, Riverside, MKP, MGE, Western, the staff, and the Office of Public Counsel entered into a "Stipulation and Agreement" to "resolve certain disputes [then pending] between the parties." These disputes involved actual and potential disallowances by the PSC for the expenses MGE incurred from Riverside and MKP. The stipulation provided that Riverside and MKP would pay nearly $3 million to indemnify MGE for the credits that would be due its ratepayers as a result of the PSC's disallowance of costs associated with MGE's contracts with Riverside and MKP. In return, as Riverside and MKP contend, it was agreed that their contracts and contract renewals with MGE would not be subject to any further ACA prudence reviews by the PSC. The PSC staff disputes this contention, arguing that the stipulation and agreement applied only to the contract at issue at the time of the settlement, not contract renewals.
In 1998, the PSC staff challenged the prudence of the parties' contract renewals, recommending that nearly $3.5 million of the associated costs be disallowed. Riverside and MKP filed motions to dismiss the review, alleging that it was precluded by the 1996 stipulation. The PSC overruled the motions; thereafter, Riverside and MKP filed a petition for a writ of prohibition in the Cole County Circuit Court, seeking to prevent the PSC from conducting the prudence review. The court, upon PSC's motion, remanded for a hearing to allow the PSC to construe the stipulation, but after conducting a hearing, the PSC again overruled the motions to dismiss.
Then, in January 1999, pursuant to section 386.510, RSMo 1994, Riverside and MKP filed a petition for a writ of review in the circuit court. The court held that the PSC had "acted unlawfully and/or unreasonably when it failed to make any finding that the 1996 Stipulation and Agreement was ambiguous, yet interpreted the Stipulation and Agreement without hearing any testimony or otherwise receiving any evidence to determine the intent of the parties to the Stipulation and Agreement." As a result, *79 the court again remanded the case to the PSC.
On March 12, 2002, the PSC issued its decision and declared the stipulation to be ambiguous as to whether it barred the prudence review. However, on the merits, it rejected the staff's recommendation to disallow a portion of the costs for the ACA period under review; consequently, Riverside and MKP were not obligated to reimburse MGE. Even though they prevailed on the disallowance issue, Riverside and MKP filed an application for rehearing, which the PSC denied. They then returned to the circuit court with another petition for a writ of review, claiming that the PSC should not have taken up the disallowance issue in the first place. The court agreed, reversing the PSC and holding that the stipulation barred the staff's proposed disallowance and precluded any further ACA review of the contracts. The PSC appealed to the court of appeals, which dismissed the appeal for lack of jurisdiction.
Riverside I, at 153-54.
On transfer in Riverside I, the PSC, taking the lead from the court of appeals, which had ruled the jurisdictional issue sua sponte, claimed that there was no jurisdiction on appeal because Riverside and MKP did not have standing to appeal. They explained that Riverside and MKP were not aggrieved parties; that is, they were not aggrieved by the decision of the PSC because the PSC ruled in their favor by denying the staff's claim for disallowances. In response, this Court held that,
The appeal at issue, however, is not the "appeal" of the decision of the PSC to the circuit court by way of petition for review, and the appellants are not Riverside and MKP. Instead, the appeal is from the judgment of the circuit court to the court of appeals and this Court, and the appellant is the PSC. . . . [Thus] the only determination necessary to establish appellate jurisdiction is whether the PSC was aggrieved by the judgment of the circuit court, and surely it was by virtue of the fact that the judgment was entered against it.
Id. at 154-55.
Although the court of appeals acknowledged this holding on retransfer, it held, nonetheless, that it still had no jurisdiction to entertain the appeal because Riverside and MKP still were not "aggrieved" by the decision of the PSC. This is the issue on which the PSC seeks the Court's reconsideration. The court of appeals reasoning, which was tacitly, if not expressly, adopted by the PSC, is that:
[T]he attack in this appeal, by Riverside and MKP, has nothing to do with the PSC's decision on the merits in the present case. Rather, it is designed to prevent "future" prudence reviews by the PSC of any of the [agreements between Riverside and MKP with MGE] that "might" occur and to avoid the potential costs they "may" have to pay MGE, pursuant thereto, by seeking an interpretation of the Stipulation that the intent of the parties to the Stipulation was to preclude all further prudence reviews by the PSC of the [agreements], including the prudence review in this case. . . . Here, Riverside and MKP did not suffer any "immediate" prejudice as a direct result of the decision of the PSC from which it seeks appellate review and relief. In fact, the direct result of the decision favored them.
The court of appeals then added that,
[T]he Court's holding in [Riverside I] raises the additional question of whether in interpreting the Stipulation, pursuant to the claim of error raised by Riverside and MKP, we would be giving them what amounts to an advisory opinion on *80 that issue inasmuch as they were clearly not aggrieved by the decision they attack on appeal . . . which is generally prohibited.
Finally, the court of appeals also maintained that this Court, in Riverside I,
did not address the issue which we raise here: Whether Riverside and MKP, as the appellants for purposes of briefing, pursuant to Rule 84.05(e), with the burden of persuasion on appeal, had to be "aggrieved" by the PSC decision, which they attack on appeal, so as to avoid our giving an advisory opinion.
In explanation, the court then stated,
The answer to the question is found in the rule itself. Rule 84.05(e) reads, in pertinent part: "If the circuit court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the circuit court, the party aggrieved by the agency decision shall file the appellant's brief and reply brief."
The court of appeals then concluded, in dismissing the case for lack of jurisdiction, that,
The Court in [Riverside I] never addressed this issue, and the Court's decision there cannot act to contravene the rule's requirement as to standing to file the appellant's brief. It simply ruled on whether there was a party with standing to bring the appeal, deciding that the PSC had such standing.
To the contrary, this Court in Riverside I did indeed address the issues with which the court of appeals concerned itself, as follows:
To the extent that the PSC is claiming that Riverside and MKP must be "aggrieved" by the decision of the PSC in order to have standing to bring the initial petition for writ of review to the circuit court, that claim fails as well. A threshold requirement for filing a petition for writ of review is to seek rehearing before the PSC under section 386.500.1, which states in pertinent part:
After an order or decision has been made by the commission, the public counsel or any corporation or person or public utility interested therein shall have the right to apply for a rehearing in respect to any matter determined therein. . . .
Subsequent review by the circuit court is governed by section 386.510, which states in pertinent part:
Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the circuit court of the county where the hearing was held or in which the commission has its principal office for a writ of certiorari or review (herein referred to as a writ of review) for the purpose of having the reasonableness or lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined. . . .
Nowhere in these procedures is any requirement that a party seeking rehearing and review must show that it is "aggrieved." Instead, the only requirement to seek rehearing is that the party must be "interested therein," and the only requirement to seek judicial review in the circuit court, as it pertains to this case, is that the interested party's application for rehearing was denied. In this case, the PSC concedes Riverside and MKP are interested parties and that their application was denied. Therefore, Riverside and MKP are entitled to judicial review "for the purpose of having the reasonableness or lawfulness of the original order . . . inquired into or determined." *81 The inquiry they present for judicial review is the lawfulness of the PSC's action in conducting ACA reviews in view of the stipulation and agreement, which, according to Riverside and MKP, precludes those reviews. The statute clearly permits this inquiry because the PSC's original order acted on those ACA reviews.
With regard to Rule 84.05(e), this Court held that the reference to "the party aggrieved by the agency decision" refers solely to "the procedures for the filing of briefs when an appeal is taken from the circuit court's judgment" and that "[i]n the context of the rule, the party aggrieved by the agency decision refers simply to the party entitled to judicial review in the circuit court." Id. at 156. The full text of the rule states:
If the circuit court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the circuit court, the party aggrieved by the agency decision shall file the appellant's brief and reply brief, if any, and serve them within the time otherwise required for the appellant to serve briefs. The party aggrieved by the circuit court decision shall prepare the respondent's brief and serve it in a time otherwise required for the respondent to serve briefs.
To reiterate, and as this Court held, "this rule pertains only to the determination of which party files its brief first and how the parties are designated." Id. at 155. Under the rule, then, a "party aggrieved by the agency decision" is simply an interested party whose application for rehearing was denied.
Again, there is simply no requirement under sections 386.500.1 and 386.510 and Rule 84.05(e) that the party contesting the decision of the PSC be "aggrieved" in the same way that a party would have to be aggrieved in order to bring an appeal in an ordinary civil case. In particular, there is no requirement to establish standing in the conventional sensethe party need only be "interested therein . . . with respect to any matter determined therein." Although the PSC, in requesting reconsideration of this holding, concedes that "the word `aggrieved' is not in the text of [section 386.500]," it maintains, nonetheless, that "[i]t cannot be that anyone `interested' in a PSC proceeding may wastefully consume judicial resources on the basis that they had merely applied to the PSC for a rehearing of a proceeding on an issue that did not harm that person's interest." But this argument does not adequately take into account that, by definition, an interested party's stake in the outcome of a case does not necessarily rise to the level of an aggrieved party's stake in the outcome. In the final analysis, the procedures for appeal of a decision by the PSC are truly sui generis. As this Court observed years ago in State ex rel. Consumers Pub. Serv. Co. v. Pub. Serv. Comm'n, 352 Mo. 905, 180 S.W.2d 40, 46 (1944),
[T]he Public Service Commission Act provides its own Code for proceedings for judicial review of its orders and . . . the reference to the general code is only to make appeals subject to the usual rules of appellate procedure where procedure is not otherwise specified in the Act. This Act itself specifies who shall have the right to be a party to review proceedings both in the circuit and appellate courts.
Even if a party must be "aggrieved" in order to have standing to file a petition for review, Riverside and MKP have made the requisite showing. A party is "aggrieved" within the meaning of section 512.020the general standing provision for civil appealswhere "the judgment operates prejudicially and directly on *82 his personal or property rights or interests and such effect is immediate and not merely a possible remote cause." Shelter Mutual Ins. Co. v. Briggs, 793 S.W.2d 862, 863 (Mo. banc 1990). Although at first glance it could be said that Riverside and MKP were not prejudiced because they prevailed on the merits of the ACA prudence review and were not required to indemnify MGE, they were aggrieved, nonetheless, by the fact that the PSC engaged in the prudence review in the first place, in purported violation of the stipulation and settlement agreement. Moreover, they presumably incurred substantial costs to litigate the merits of the prudence review, costs that would not have been incurred had the settlement agreement been enforced. Furthermore, the judgment of the circuit court did not constitute an impermissible advisory opinion because the judgment addressed an immediate deprivation of Riverside and MKP's rights under the settlement agreement. Nor is the judgment an impermissible advisory opinion as to prudence reviews that may or may not be undertaken by the PSC in the future. Suffice it to say that the PSC has now indeed undertaken prudence reviews for the additional years in question, and the issue presentedwhether the settlement agreement precludes those prudence reviewsis the same as that resolved here.
Yet another point of contention is that "the circuit court's judgment, `correcting the PSC's order,' from which this appeal was taken, was null and void, ab initio, in that it exceeded the court's jurisdiction." In fact, the circuit court not only "corrected" the PSC's decision "to reflect that the Stipulation (i) barred the Staff's proposed disallowance in this case and (ii) precludes any further ABA prudence review of the decisions associated with the execution of the `Missouri Agreements' and (iii) only permits review of compliance and operational matters," but also ordered the PSC "to limit any further proceedings to questions which have arisen or may arise regarding compliance and operational matters under the contracts and to not conduct any future proceedings which revisit issues resolved by the Stipulation as set forth herein." The circuit court exceeded its jurisdiction, it is argued, because ". . . section 386.510 expressly limits the circuit court's jurisdiction to either `affirming or setting aside the order of the commission under review' in that it does not expressly grant the circuit court any other authority to act with respect to PSC decisions or orders under review." The court of appeals dismissed the appeal for lack of jurisdiction on this additional ground.
As noted, section 386.510 states: "Within thirty days after the application for rehearing is denied . . . the applicant may apply to the circuit court . . . for the purpose of having the reasonableness or lawfulness of the original order or decision or the order of decision on rehearing inquired into or determined." The statute goes on to state, however, that,
Upon the hearing the circuit court shall enter judgment either affirming or setting aside the order of the commission under review. In case the order is reversed by reason of the commission failing to receive testimony properly proffered, the court shall remand the cause to the commission, with instructions to receive the testimony so proffered and rejected, and enter a new order based on the evidence theretofore taken, and such as it is directed to receive. The court may, in its discretion, remand any cause which is reversed by it to the commission for further action. No court in this state, except the circuit courts to the extent herein specified and the supreme court or the court of appeals on *83 appeal, shall have jurisdiction to revise, reverse, correct, or annul any order or decision of the commission . . . or to enjoin, restrain or interfere with the commission in the performance of its official duties. The circuit courts shall always be deemed open for the trial of suits brought to review the orders and decisions of the commission as provided in the public service commission law and the same shall be tried and determined as suits in equity.
The PSC now contends that the circuit court has authority only to "enter judgment either affirming or setting aside the order of the commission under review," and that no court has jurisdiction to review, reverse, correct or annul an order or decision of the commission. In explanation, the PSC states,
While a circuit court may remand reversed causes to the commission for further action, that is not the action taken by the court in this instance. The court rather purported to correct the commission's decision by finding facts [pertaining to the effect of the stipulation] based on substitution of its judgment for that of the Commission, which is clearly prohibited by the statute.
As the PSC further explains,
Because the disallowance issue was not challenged on review, the circuit court did not reverse the Commission's decision. Rather, by selecting specific fact issues for the Commission to reconsider [again, pertaining to the effect of the stipulation], while not affecting the ultimate outcome of the rate case, the circuit court plainly interferes in the Commission's performance of its official duties. Further, by ordering limitations on the future proceedings of a rate case, clearly within the Commission's exclusive jurisdiction, the Circuit court exceeded its authority under section 386.510.
This argument is based on an incorrect interpretation of the statute that takes a single sentence out of the context of the statute as a whole. That sentence"No court in this state, except the circuit courts to the extent herein specified and the supreme court or the court of appeals on appeal, shall have jurisdiction to revise, reverse, correct, or annul any order or decision of the commission . . . or to enjoin, restrain or interfere with the commission in the performance of its official duties."appears to be a broad prohibition against court review of PSC actions. But it is expressly qualified by the words "except the circuit courts to the extent herein specified. . . ." The "extent herein specified" is that the applicant "may apply to the circuit court . . . for the purpose of having the reasonableness or lawfulness of the original order or decision or the order of decision on rehearing inquired into or determined." In addition, the statute specifies that "[t]he circuit courts shall always be deemed open for the trial of suits brought to review the orders and decisions of the commission. . . ." The broad prohibition against court review, then, is simply a limitation on the procedures that may be employed to challenge the actions of the PSC, State ex rel. and to Use of Pub. Serv. Comm'n v. Blair, 347 Mo. 220, 146 S.W.2d 865, 868 (1941), but it does not dilute the power of the courts to determine the reasonableness or lawfulness of PSC orders and decisions.
That said, however, the jurisdiction of the circuit court is indeed restricted to "affirming or setting aside the order of the commission under review," State ex rel. Chicago, Rock Island & Pac. R. Co. v. Pub. Serv. Comm'n, 312 S.W.2d 791, 793 (Mo. banc 1958), and that part of the judgment in which the circuit court purported *84 to "correct" the decision of the PSC and enjoin the PSC from further proceedings must be stricken as surplusage. Nonetheless, the clear import of the judgment was to set aside and reverse the decision of the PSC, and the court's judgment to that effect was ultimately a determination of the lawfulness of the decision of the PSC. And although the PSC complains that "the disallowance issue was not challenged on review" so that the court cannot be said to have reversed the decision of the PSC, the lawfulness of the decision was still at issue if, because of the stipulation, the PSC should have disallowed the ACA prudence reviews in the first place. Accordingly, this Court holds that under section 386.510, the circuit court had jurisdiction to enter a judgment setting aside and reversing the decision of the PSC on the basis that the PSC acted unlawfully.
It must next be determined whether the stipulation does in fact preclude the PSC from undertaking those ACA reviews. In determining whether the PSC's order is lawful, the court must exercise "unrestricted, independent judgment" and "correct erroneous interpretations" of the law. Burlington N.R.R. v. Dir. of Revenue, 785 S.W.2d 272, 273 (Mo. banc 1990). The stipulation provided, in pertinent part:
5. As a result of this Stipulation, the Signatories agree that neither the execution of [certain agreements entered into by MGE's predecessor, Western Resources], nor the decisions associated with the execution of the Missouri Agreements shall be the subject of any further ACA prudence review. In addition, the Signatories agree that the transportation rates and gas costs charged pursuant to the Missouri Agreements shall not be the subject of any further ACA prudence review until the case associated with the audit period commencing July 1, 1996 and ending June 30, 1997. The Missouri Agreements will be subject to the compliance and operational review of the Staff for all periods on and after July 1, 1994, and MGE's ACA balance may be subject to adjustment as a result of such review. . . . Although the prudence of entering into the MKP/WR Sales Agreement and the Riverside/WR Transportation Agreement I is finally settled by this Stipulation, additional questions may arise regarding the administration of the contracts by MGE and WR in Staff's compliance and operation review for all periods on and after July 1, 1994, as described above. Therefore, this Stipulation is not designed to preclude the Staff from making proposed adjustments regarding issues involving the manner in which gas is actually taken under the contracts (e.g. gas which was available under the contract was not taken for some reason) or issues involving billing matters (e.g. MGE paid more than was required under the contract due to a billing or mathematical error). . . .
A stipulation, like any other settlement agreement, must be construed using ordinary rules of contract construction. Andes v. Albano, 853 S.W.2d 936, 941 (Mo. banc 1993). A contract must be construed as a whole so as to not render any terms meaningless, and a construction that gives a reasonable meaning to each phrase and clause and harmonizes all provisions is preferred over a construction that leaves some of the provisions without function or sense. Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. banc 2003).
The first sentence of paragraph 5 of the stipulation expressly provides that the PSC may not conduct "any further ACA prudence review" on the "decisions associated with the execution of the Missouri *85 Agreements." Any perceived ambiguity that arises as a result of any apparent qualification in the second sentence of paragraph 5 is resolved by reference to a footnote, which provides that "any issues related to gas costs associated with the Missouri Agreements will be subject to the provision that unless MGE's costs subject to the Incentive PGA provisions to be filed rise to the level where a prudence review is triggered, there will be no prudence review of the Missouri Agreements." Because the prudence review at issue in this case was not triggered by MGE's costs subject to MGE's Incentive PGA, it did not fall within the qualification in the second sentence. Furthermore, by expressly providing that the stipulation does not preclude the PSC from conducting "compliance and operation review" of the Missouri agreements, the stipulation necessarily implies that the PSC is precluded from conducting a prudence review of such agreements. There is no ambiguity. The contract speaks for itself and precludes any further ACA prudence reviews of the Missouri Agreements. As such, the PSC acted unlawfully in failing to disallow the ACA prudence reviews altogether and, thus, further acted unlawfully in conducting its own review of those prudence reviews.
For the foregoing reasons, this Court affirms the circuit court judgment, as modified, setting aside the decision of the PSC.
All concur.