

# In the
# Missouri Court of Appeals
# Western District

DITTO, INCORPORATED, )
)
Appellant, ) WD77297
)
v. ) OPINION FILED:
) November 12, 2014
HEATHER DAVIDS, CHRIS DAVIDS )
AND REVIVE LEE'S SUMMIT, LLC, )
F/K/A DITTO LEE'S SUMMIT, LLC, )
)
Respondents. )

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable James F. Kanatzar, Judge

Before Division Three:  Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

Ditto, Inc. ("Ditto") appeals the trial court's grant of summary judgment in favor of

Heather Davids ("Heather"), Chris Davids ("Chris"),[1] and Revive Lee's Summit, LLC

f/k/a Ditto Lee's Summit, LLC ("Revive") (collectively "the Defendants") on Ditto's

breach of contract claim.   Ditto asserts that the grant of summary judgment was

erroneous because: (1) the contract between Ditto and the Defendants had a definite term

---

[1]Because Heather Davids and Chris Davids share the same surname, we refer to each by their first name for purposes of clarity.  No familiarity or disrespect is intended.

and was not terminable at will as a matter of law; (2) summary judgment should not have been granted based on the affirmative defense of equitable estoppel when the Defendants did not properly plead that defense; and (3) alternatively, material facts remained in genuine dispute regarding the affirmative defense of equitable estoppel preventing the entry of judgment as a matter of law. We reverse and remand.

## Factual and Procedural History

Ditto is a Missouri corporation that was formed in 2005. So Yun ("Yun") is the sole shareholder and president of Ditto. Ditto owns and operates used clothing stores throughout the Kansas City metropolitan area.

Yun approached Heather, a frequent customer, about the possibility of collaborating to open a Ditto store in Lee's Summit. Ultimately, Ditto and Heather executed a contract denominated a "Joint Venture Agreement" ("JVA") in March or April 2010.[2] The JVA outlined the parties' obligations with respect to opening and operating a Ditto store in Lee's Summit in leased space identified by address and square footage. The lease anticipated by the JVA was referenced as Exhibit B ("Lease"). The JVA was effective upon its execution, and provides in Article 4 that it will "continue in full force and effect until the Parties' obligations as set forth in this JVA have been completed." At or near the time the JVA was signed, the Lease was signed by Heather as the tenant and by Ditto as the guarantor.

---

[2]The JVA is not dated. However, the Lease anticipated by the JVA is dated April 27, 2010. For purposes of this opinion, we have accepted the parties' characterization of their relationship as a "joint venture," without independently determining whether the relationship satisfies the legal definition of that term. As discussed, *infra*, even if the parties have mistakenly characterized their business relationship as a joint venture (which we do not and need not determine), our analysis regarding the duration of the JVA is unaffected, as the legal principles applicable to that determination apply evenly to all contracts.

2

Heather and her husband Chris thereafter began operating the Lee's Summit Ditto store through an entity known as Ditto Lee's Summit, LLC, a limited liability company ("Ditto LLC"). Ditto LLC was wholly owned by Chris. However, the JVA was never formally assigned to Ditto LLC, and Heather remained the obligor under the JVA.

In September 2012, Heather and Yun met to discuss the business relationship with Ditto, as Heather had become dissatisfied with the relationship. According to Yun:

> [A]t that time [Heather] asked about the ending to the Joint Venture Agreement. I told her there was no end date; it's an ongoing agreement as long as she was using the Ditto name. At that point she stated that she did not agree with that, and she and her husband discussed the current situation and wanted to end the relationship and re-brand.
>
> . . . .
>
> I said that was not an option, and if that is what she wanted to do then we needed to contact our attorneys.

Following that meeting, attorneys for Ditto and Heather began negotiations to see if an agreement could be reached to terminate the JVA.

In connection with those negotiations, Ditto's attorney sent Heather's attorney a letter on September 12, 2012. The letter acknowledged Heather's desire to terminate the JVA. The letter asked Heather to propose terms for terminating the JVA. Heather's response does not appear in the record. However, the record does contain a letter from Ditto's attorney to Heather's attorney dated September 20, 2012,[3] rejecting terms proposed by Heather. In that letter, Ditto's attorney indicates that "my client is satisfied with continuing the JVA as it currently stands" and that "Ditto is entitled to payments of

---

[3]The letter is actually dated 2013, though no one contests this was a typographical error.

6% until July, 2012[4] and 5% of the gross receipts monthly, which would continue indefinitely."

Heated communications continued between the parties' attorneys regarding, among other things, whether the JVA constituted a franchise agreement and whether Heather was in breach of the JVA. On November 12, 2012, Ditto's attorney sent Heather's attorney an email which claimed that the JVA "is of unlimited duration," and is thus terminable at will. Ditto's attorney threatened that if an agreement regarding termination of the JVA could not be reached, Ditto "will be forced to terminate the at-will contract and take over the store."

Heather's attorney responded with an email dated November 19, 2012 which stated:

> [W]e agree with your assertion that the Joint Venture Agreement between Ditto, Inc. and Heather Davids is terminable at will.
>
> Accordingly, Heather Davids hereby terminates the Joint Venture Agreement effective January 15, 2012. Ms. Yun is a guarantor on the commercial lease between Heather Davids and Lee's Summit Investors-98. My clients will make best efforts to facilitate the cancellation of Ms. Yun's . . . guarantee on that lease.
>
> My client acknowledges the license extended by Ditto, Inc. to use its "DITTO" trademark will also terminate with the agreement. Therefore, my client will cease using the Ditto mark in its business and return the "Seller's Guide" to Ms. Yun. My client will terminate the use of the "DITTO" trademark for all other purposes and cease any related advertising and marketing identifying it as the "DITTO" brand. She will also change the name of the company to one that does not include the name "DITTO". Ms. Yun may purchase the "DITTO" store signage from my client at fair market value if the parties can agree to a price. Otherwise, the signage will be destroyed.

---

[4]The JVA anticipated a monthly payment of a graduated percentage of gross sales to Ditto that decreased over time.

4

> Of course, with the termination of the agreement, the royalties paid pursuant to paragraph 1.7 of the Joint Venture Agreement will cease as of January 15, 2013, as well, and my client will provide the final royalty payment on February 15, 2013 as required by the agreement.

Ditto's attorney claims to have advised Heather's attorney on or about November 30, 2012 "that Ditto, Inc. disclaimed any contention or belief that the Joint Venture Agreement was of indefinite duration and, as a result, 'terminable at will' by Heather Davids." Consistent with this contention, Ditto filed a lawsuit on November 30, 2012 against Ditto LLC and Heather seeking, among other things, to enjoin termination of the JVA.[5]

Notwithstanding Ditto's disclaimed contention and the pending lawsuit seeking to enjoin termination of the JVA, Heather terminated the JVA on February 1, 2013. The Defendants changed the name of the Lee's Summit store to "reVive Upscale Resale Clothing," and made their last payment to Ditto for a percentage of gross sales at the store on or about February 15, 2013. Heather was not able to secure Ditto's release as a guarantor on the Lease.

Ditto filed the instant suit against the Defendants on February 6, 2013. The petition asserted two claims: that the Defendants breached the JVA by terminating the JVA, and that the Defendants breached a fiduciary duty owed to Ditto. The Defendants filed an answer in which they asserted, among other things, an affirmative defense that Ditto's "claims are barred, in whole or in part, by waiver, release, laches, estoppel, disclaimer, novation, lack of consideration, and/or overreaching." The Defendants also

---

[5]That lawsuit was subsequently dismissed by Ditto without prejudice on February 14, 2013.

asserted counterclaims against Ditto for unjust enrichment and for money had and received.

After significant discovery, and in the time frame anticipated by the trial court's scheduling order which imposed a firm jury trial date, the parties filed competing motions for summary judgment. The Defendants filed two motions. The first was a motion for partial summary judgment which argued that the JVA had an indefinite term and was therefore terminable at will, requiring judgment in the Defendants' favor on Ditto's breach of contract claim as a matter of law. The second was a motion for summary judgment which asserted: (i) the alternative argument that Ditto was equitably estopped to assert its breach of contract claim because Heather detrimentally relied on Ditto's representations that the JVA was indefinite in its term and terminable at will; and (ii) that no fiduciary relationship existed between Ditto and the Defendants warranting the entry of judgment on Ditto's fiduciary duty claim in the Defendants' favor as a matter of law. Ditto filed a competing motion for partial summary judgment which argued in opposition to the Defendant's motion for partial summary judgment that the JVA had a definite term that was co-extensive with the express 63-month term of the Lease and was therefore not terminable at will. Ditto thus sought judgment in its favor as a matter of law on its breach of contract claim.

The trial court issued an "order and judgment" on January 16, 2014. The order granted both of the Defendants' motions for summary judgment, and denied Ditto's motion for partial summary judgment. The order concluded that the JVA "is clear and unambiguous and created an agreement of indefinite duration" permitting the JVA to be

6

terminated at the will of either party. The trial court thus concluded that the Defendants were entitled to judgment on Ditto's breach of contract claim as a matter of law. The trial court alternatively concluded that the Defendants were also entitled to judgment on Ditto's breach of contract claim because the uncontroverted facts established that Ditto was equitably estopped to contend that the JVA was of a definite duration because Heather detrimentally relied on Ditto's representations that the JVA was of an indefinite duration, "subject[ing] Defendants to the cost of defending this legal action." Finally, the trial court's order concluded that the Defendants were entitled to summary judgment on Ditto's breach of fiduciary duty claim because the uncontroverted facts established that the relationship between the parties was not in the nature of a partnership, and that no fiduciary relationship existed between the parties.

Following entry of the trial court's order and judgment, the Defendants voluntarily dismissed their counterclaims leaving no issues to be determined by the trial court, and rendering the order and judgment a final judgment resolving all matters in dispute. Ditto thereafter filed this timely appeal claiming error in the grant of summary judgment in favor of the Defendants on Ditto's breach of contract claim.[6]

### Standard of Review

Our Supreme Court set out the standard of review for the grant of summary judgment in *Goerlitz v. City of Maryville*:

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore this Court need not

_____

[6]Ditto has not appealed the grant of summary judgment in favor of the Defendants on Ditto's breach of fiduciary duty claim.

7

defer to the trial court's determination and reviews the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Only genuine disputes as to material facts preclude summary judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows.

A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of facts necessary to support movant's properly pleaded affirmative defense." *Id.* at 381. Each of these three methods individually "establishes the right to judgment as a matter of law." *Id.* . . .

. . . "The record below is viewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." . . . *Hammack v. Coffelt Land Title, Inc.*, 284 S.W.3d 175, 177-78 (Mo. App. W.D. 2009) (internal quotations and citations omitted). *See also ITT Commercial Fin.*, 854 S.W.2d at 376.

333 S.W.3d 450, 452-53 (Mo. banc 2011).

## Analysis

Ditto asserts three points on appeal. First, Ditto argues that the trial court erred in granting the Defendants' motion for partial summary judgment and in denying Ditto's

motion for partial summary judgment[7] on Ditto's breach of contract claim because the JVA had a definite term and was therefore not terminable at will. Second, Ditto argues that the trial court erred in granting the Defendant's motion for summary judgment on the breach of contract claim based on the affirmative defense of equitable estoppel because that affirmative defense was not properly pled. Third, Ditto alternatively argues that genuine issues of material fact remain in dispute with respect to establishing the affirmative defense of equitable estoppel preventing the entry of summary judgment on the basis of that defense as a matter of law.

### *Point One--Duration of the JVA*

Defendants' and Ditto's competing motions for partial summary judgment require us to determine whether the JVA was of indefinite duration and thus terminable at will. "Ordinarily an agreement providing for a joint []venture which fixes no specific termination date *either expressly or by necessary implication* remains in effect until the purpose of the agreement is accomplished or until it is ascertained that the purpose cannot be accomplished." *Morrison v. Caspersen*, 323 S.W.2d 697, 702 (Mo. 1959) (emphasis added). "Where, however, the joint venture agreement which *fixes no specific termination date [either expressly or by necessary implication]* is a contract for the

---

[7]Ordinarily, the denial of a motion for summary judgment is not appealable. *Sauvain v. Acceptance Indem. Ins. Co.*, 339 S.W.3d 555, 568 (Mo. App. W.D. 2011). However, it is widely understood that "'the denial of a motion for summary judgment may be reviewable when . . . the merits of the motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party.'" *Id.* (quoting *Schroeder v. Duenke*, 265 S.W.3d 843, 850 (Mo. App. E.D. 2008). When reviewing Ditto's motion for partial summary judgment, there can be no doubt that it is intertwined with the grant of the Defendant's motion for partial summary judgment, as both motions turn on whether the JVA is of an indefinite duration, and thus terminable at will. The Defendants' assertion in their Brief that Ditto's appeal should be dismissed because Ditto improvidently seeks appellate review of the denial of its partial motion for summary judgment is plainly without merit given the circumstances in this case.

9

continuing operation of a general business for an indefinite period, the joint venture should be and usually is terminable at the will of any party to the agreement." *Id.*[8] (emphasis added). *Morrison* thus directs that the first step in addressing whether a joint venture agreement is terminable at will is to determine whether the agreement fixes a specific termination date "either expressly or by necessary implication." *Id.*

There is no dispute that the JVA does not "expressly" fix a specific termination date. Rather, the JVA states only that it will remain "in full force and effect ***until the Parties' obligations as set forth in this JVA have been completed***." (Emphasis added.) As crafted, at least, this provision fixes a specific termination date by necessary implication, as it ties termination of the JVA to the completion of obligations therein defined. However, the provision cannot operate to in fact fix a specific termination date by necessary implication unless the time for completion of the obligations set forth in the JVA is susceptible of calculation.

To make that determination, we turn to the language of the JVA. "'The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning.'" *Preferred Physicians*, 961 S.W.2d at 102 (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo.

---

[8]This legal principle is not unique to joint venture agreements and is of equal application to all contracts. *See, e.g.*, *Armstrong Bus. Servs., Inc. v. H&R Block*, 96 S.W.3d 867, 874-78 (Mo. App. W.D. 2002) (addressing whether a franchise agreement was of indefinite duration and thus terminable at will); *Preferred Physicians Mut. Mgmt. Grp., Inc. v. Preferred Physicians Mut. Risk Retention Grp., Inc.*, 961 S.W.2d 100, 102-03 (Mo. App. W.D. 1998) (addressing whether a contract to provide management and operational services was of indefinite duration and terminable at will); *Paisley v. Lucas*, 143 S.W.2d 262, 270-71 (Mo. 1940) (addressing whether a contract between an insurance company and an insurance agent was of indefinite duration and terminable at will).

10

banc 1973)).  "'[T]he intention of the parties with respect to duration and termination of their contract is to be determined from the surrounding circumstances and by application of a reasonable construction of the agreement as a whole; and the duration of a contract may be implied from the nature of the contract or from the circumstances surrounding it.'" *Union Pac. R.R. v. Kansas City Transit Co.*, 401 S.W.2d 528, 534 (Mo. App. 1966) (quoting 17A C.J.S. *Contracts* section 385(1)).

The JVA sets out the obligations of the parties in Articles 1 and 2.  Heather's obligations are set forth in Article 1 as follows:

1.1    To "secure leased space in retail space located at 609-613 NW Murray Road, Lee's Summit, Missouri 64081, which consists of approximately 2,967 gross rentable square feet of space (the Retail Space)."

1.2    To "secure and pay for all build-outs for the Retail Space."

1.3    To "secure and pay for all fixtures for the Retail Space."

1.4    To "secure and pay for all inventory and supplies for the Store."

1.5    To "secure and pay for all employees at the store," and "timely pay and remit all" taxes "applicable to such employees," and to "indemnify Ditto for any unpaid taxes for which the Store may become liable."

1.6    To "timely remit all state and local sales taxes," and to "indemnify Ditto for any unpaid portion," and to provide Ditto monthly with "all sales tax reporting forms."

1.7    To "pay Ditto the following percent of the gross sales for the Store on a monthly basis by the 15th day of each month for the prior month:

| | |
|---|---|
| For the first year of this agreement: | 10% |
| For the second year of this agreement: | 8% |
| For the third year of this agreement: | 6% |
| For each subsequent year of this agreement: | 5%" |

11

1.8     To "adhere to the provisions of the Dittos Sellers Guide, a copy of which is attached hereto and incorporated herein."

1.9     To "execute a Promissory Note in the amount of $15,000 concurrent with this agreement, attached as Exhibit A and incorporated herein, the terms of which shall be understood to constitute a lien of all fixtures and inventory located at the Store."

1.10    To "maintain insurance compliant with the terms of the Lease for the Store Location and to protect the fixtures and inventory at the Store," providing Ditto with a copy of the renewal "on an annual basis."

1.11    To "agree[] that Ditto will have the right to assume control of and operate the Store" if Heather "defaults on the terms of the Note or the Lease."

1.12    To "contribute pro rata to any marketing campaign conducted by Ditto for the mutual benefit of Ditto and the Store."

Ditto's obligations are set forth in Article 2 as follows:

2.1     To "lend [Heather] $15,000 to assist with start-up costs for the Store, according to the terms of the Promissory Note attached as Exhibit A and incorporated herein."

2.2     To "permit the use of the name . . . by [Heather]."

2.3     To "provide consultation and assistance by its president [Yun] as needed by [Heather]."

2.4     To "provide its Seller's Guide for the assistance of [Heather] in operating the Store."

2.5     To "guarantee the Lease of the Store Location."

2.6     To "assume control of the operations of the Store and fulfill the obligations of the Lease" should Heather default "in the terms of this Agreement, the Lease, or the Promissory Note."

Some of the obligations set forth in the JVA are drafted in a manner which renders their completion susceptible of determination. For example, it can be easily ascertained

12

whether a lease has been secured, build-outs in the leased space have been secured and paid for, or a Note has been signed. However, other obligations set forth in the JVA are not drafted in a manner which renders their completion susceptible of determination. For example, Heather's obligations to pay for inventory and supplies for the Store, to pay Ditto 5% of gross sales "for each subsequent year of this agreement," and to pay all employees as well as sales and local taxes, are continuing obligations of apparent unlimited duration based solely on the language of the JVA. Similarly, Ditto's obligation to consult with and advise Heather is also not plainly susceptible of completion and appears to be of unlimited duration.

Ditto argues, however, that to determine the time frame for performance of the obligations set forth in Articles 1 and 2, we must consult not only the JVA, but also the Lease. Ditto argues that the Lease, which is expressly referenced in, required by, and identified as Exhibit B to, the JVA is the core operative document around which all of the JVA performance obligations revolve. As a result, according to Ditto, obligations in the JVA that appear to be of unlimited duration are in fact limited in their duration by reference to the Lease which has a fixed specific term of 63 months.

It is well established that when several instruments relating to the same subject are executed at the same time, "the documents will be construed together, even in the absence of explicit incorporation, unless the realities of the situation indicate that the parties did not so intend." *Johnson ex rel. Johnson v. JF Enterprises, LLC*, 400 S.W.3d 763, 767 (Mo. banc 2013) (emphasis and internal quotation marks omitted). "Whether or not the documents are treated as a single contract depends on the intent of the parties, ***but***

13

*even where not part of a single contract, courts will consider the instruments together to determine the parties' intent*." *Id.* (emphasis added.)

Here, the JVA unambiguously addresses the cooperative agreement of Ditto and Heather to operate a retail store in leased premises. The JVA identifies the leased space by size and location, and references the Lease both parties agreed to sign and to perform.[9] The JVA unambiguously requires performance of several obligations directly related to operation of the store in the leased space. And the JVA unambiguously obliges Ditto to assume and fulfill Heather's obligations under the Lease should Heather default under the JVA, the Lease or the Promissory Note. It is plain that the "realities of the situation" do not indicate the intent to read the JVA and the Lease separately. In fact, unless the JVA and the Lease are construed together as part and parcel of a single agreement, the JVA is rendered a hollow agreement with no purpose. *State ex rel. Riverside Pipeline Co., L.P. v. Pub. Serv. Comm'n*, 215 S.W.3d 76, 84 (Mo. banc 2007) (holding that we do not construe contract provisions in a manner that would render them meaningless).

We are thus required to construe the JVA and the Lease together. That requires us to read the portions of the JVA setting out the performance obligations of the parties in a manner that is in harmony with the Lease. The Lease has a fixed duration of 63-months. The obligations in the JVA that otherwise appear to be of unlimited duration are, in fact, limited in their duration to the time frame within which the parties anticipated the retail store to operate in the leased space. Stated differently, the term of the JVA, defined as

---

[9]Heather agreed to sign the Lease as the tenant. Ditto agreed to sign the Lease as a guarantor. Heather agreed to perform the Lease. Ditto agreed to perform the Lease if Heather defaulted on the Lease.

14

ending upon completion of the obligations therein set forth, is necessarily co-extensive with the term of the Lease. Once the Lease term expires, the "purpose of the [JVA] is accomplished." *Morrison*, 323 S.W.2d 702. Thus, the obligation to buy supplies and inventory for the store in the leased space, to hire and pay taxes on employees for the store in the leased space, to pay a percentage of sales from the store in the leased space, to consult in the operation of the store in the leased space, and to do all other things associated with the operation of the store in the leased space, will be completed, fixing a specific term of the JVA by necessary implication.

The Defendants argue that we are not permitted to consider the Lease in construing the duration of the JVA because although the Lease is anticipated by the JVA and referenced as an Exhibit to the JVA, the JVA does not expressly incorporate the Lease by reference. The Defendants point out that in contrast, the JVA does expressly incorporate the Promissory Note and the Ditto Sellers Guide by reference.

It is true that an instrument may incorporate the whole or any part of another instrument by reference. *Wilson Mfg. Co. v. Fusco*, 258 S.W.3d 841, 845 (Mo. App. E.D. 2008). And it is true that "matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract *in hac verba*." *Jim Carlson Constr., Inc. v. Bailey*, 769 S.W.2d 480, 481 (Mo. App. W.D. 1989). Thus, when another instrument is incorporated by reference, the original instrument and the incorporated instrument must be construed together. *Wilson Mfg.*, 258 S.W.3d at 845. The application of this principle here requires reading the JVA, the Ditto Seller's Guide, and the

15

Promissory Note together because the latter two documents were incorporated in the JVA by express reference.

It is not true, however, that documents can *only* be construed together if they are expressly incorporated by reference. *Johnson* plainly holds otherwise, requiring that documents that are contemporaneously executed as a part of the same transaction be construed together "***even in the absence of explicit incorporation***."  400 S.W.3d at 767 (emphasis added).  Thus, the Defendants' reliance on *Dunn Industrial Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421 (Mo. banc 2003), for the broad proposition that a document attached to, but not incorporated by reference into, a contract cannot be read together with the contract is misplaced.  In *Dunn Industrial Group*, the Supreme Court was required to determine whether the guarantor of a construction contract was bound to an arbitration provision in the construction contract.  *Id.* at 435.  The guaranty referred to an attached construction contract.  *Id.* at 436.  The Supreme Court concluded based on the facts of that case that "[m]ere reference to the construction contract in the guaranty [was] insufficient to establish that [the guarantor] bound itself to the arbitration provision of the construction contract."  *Id.*  The Supreme Court did not hold, however, that reference to a separate agreement in a contract can never support reading the agreements as together.

Rather, *Dunn* is nothing more than a rare example of the exception to the general rule which ***requires*** contemporaneous documents related to the same transaction to "be construed together, even in the absence of explicit incorporation, ***unless*** the realities of the situation indicate that the parties did not so intend."  *Johnson*, 400 S.W.3d at 767 (emphasis added) (emphasis and internal quotation marks omitted.  In contrast to *Dunn*,

16

the Supreme Court in *Johnson* construed and harmonized a contemporaneously executed arbitration agreement and installment contract together, even though the installment contract contained a merger clause, and even though neither agreement was attached to the other, expressly referred to in the other, or expressly incorporated by reference into the other. *Id.* at 767-68.

The JVA and the Lease were contemporaneously executed as a part of the same transaction. Performance of the JVA plainly required the Lease to be executed by Heather and guaranteed by Ditto. Many of the parties' obligations set forth in the JVA refer to operation of the store in the leased space. *Johnson* requires the JVA and the Lease to be read together and harmonized. Thus, obligations set forth in the JVA that appear at to be of unlimited duration are all related to operation of the store in the leased space and are thus limited in duration by the fixed specific term of the Lease. The JVA thus has a fixed specific termination date by necessary implication as the parties' obligations set forth in the JVA will be completed when the Lease term ends. The JVA is not of indefinite duration, and is thus not terminable at will, as a matter of law.

The trial court erred in concluding to the contrary, and thus erred in granting judgment in the Defendants' favor on Ditto's breach of contract claim in response to Defendants' motion for partial summary judgment. The trial court correspondingly erred when it denied Ditto's competing motion for partial summary based on the erroneous conclusion that the JVA was terminable at will. However, Ditto is not entitled to the grant of summary judgment on its breach of contract claims at this stage of the

17

proceedings.[10] In addition to a determination that the JVA was not terminable at will, Ditto's motion for partial summary judgment sought the corresponding determination that, as a matter of law, Heather breached the JVA by prematurely terminating same, and a calculation of Ditto's damages for breach. Though we have concluded as a matter of law that the JVA is not terminable at will because its term is fixed by necessary implication to be co-extensive with the term of the Lease, that determination at best lays the foundation for Ditto's claim of breach of contract, and does not establish all of the essential elements of the claim as to permit the entry of judgment in Ditto's favor as a matter of law.

Point One is granted.

### Point Two--Whether the Affirmative Defense of Equitable Estoppel was Properly Pled

The trial court also granted the Defendants' second motion for summary and thus alternatively entered judgment in the Defendants' favor on Ditto's breach of contract claim because it concluded that the claim was barred as a matter of law by the affirmative defense of equitable estoppel. Ditto's second point on appeal complains that this was error because the affirmative defense of equitable estoppel was not properly pled. We agree.

The parties do not dispute that equitable estoppel is an affirmative defense. *See White v. White*, 293 S.W.3d 1, 16 (Mo. App. W.D. 2009) ("The doctrine of equitable estoppel . . . is an affirmative defense. (internal quotation marks omitted)). Equitable

---

[10]In fact, though Ditto appropriately sought review of the denial of its motion for partial summary judgment, *see supra* note 7, Ditto has not asked us to enter judgment in its favor against the Defendants on Ditto's breach of contract claim, recognizing that other matters essential to the entry of judgment in its favor on that claim remain to be determined on remand.

18

estoppel is an assertion "'that even if the allegations in the plaintiff's petition are established, the plaintiff cannot prevail because additional facts exist which avoid the legal responsibility of the defendant.'" *Belt v. Wright Cnty.*, 347 S.W.3d 665, 669 (Mo. App. S.D. 2011) (quoting *Rodgers v. Czamanske*, 862 S.W.2d 453, 459 (Mo. App. W.D. 1993)).  In a breach of contract case, "equitable estoppel seeks to foreclose a party from denying its expressed or implied admission that has, in good faith and pursuance of its purpose, been accepted and relied upon by another." *Back Ventures, LLC v. Safeway, Inc.*, 410 S.W.3d 245, 255 n.10 (Mo. App. W.D. 2013).

For summary judgment to be granted to a defendant on the basis of an affirmative defense, the movant must establish "that there is no genuine dispute as to the existence of *each* of the facts necessary to support movant's ***properly-pleaded*** [sic] affirmative defense." *ITT Commercial*, 854 S.W.2d at 381 (second emphasis added).  Rule 55.08 requires a party to "set forth all applicable affirmative defenses," including equitable estoppel, in a responsive pleading.  "A pleading that sets forth an affirmative defense . . . shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense . . . ."  Rule 55.08.  Bare legal assertions are insufficient to plead an affirmative defense.  *ITT Commercial*, 854 S.W.2d at 383.  Instead, "[a]n affirmative defense is asserted by the *pleading of additional facts* not necessary to support a plaintiff's case which serve to avoid the defendants' legal responsibility even though plaintiffs' [sic] allegations are sustained by the evidence." *Id.* (internal quotation marks omitted).  In other words, the factual basis for an affirmative defense must be set forth in the same manner prescribed for pleading claims.  *Curnutt v. Scott Melvin Transp., Inc.*,

19

903 S.W.2d 184, 192 (Mo. App. W.D. 1995). "'A pleading that makes a conclusory statement and does not plead the specific facts required to support the affirmative defense fails to adequately raise the alleged affirmative defense, and the alleged affirmative defense fails as a matter of law.'" *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 38 (Mo. App. E.D. 2013) (quoting *Echols v. City of Riverside*, 332 S.W.3d 207, 211 (Mo. App. W.D. 2010)).

Here, the Defendants' answer alleged that "[Ditto's] claims are barred, in whole or in part, by waiver, release, laches, estoppel, disclaimer, novation, lack of consideration, and/or overreaching." There were no factual allegations accompanying this statement of affirmative defenses. The assertion is thus a bare conclusory statement that "does not plead the specific facts required to support the affirmative defense[s] [and thus] fails to adequately raise the alleged affirmative defense[s], [causing] . . . the alleged affirmative defense[s] [to] fail[] as a matter of law." *Delacroix*, 332 S.W.3d at 38 (internal quotation marks omitted).

We reached a similar conclusion in *Century Fire Sprinklers, Inc. v. CAN/Transportation Insurance Co.*, 23 S.W.3d 874 (Mo. App. W.D. 2000). There, the trial court granted summary judgment in favor of the defendant insurer based on a policy exception that was not pled as an affirmative defense. *Id.* at 875. After concluding that an insurance policy exception is an affirmative defense that must be pled under Rule 55.08, we reversed the trial court's entry of summary judgment. *Id.* at 879-80. Similarly, in *State ex rel. Nixon v. Consumer Automotive Resources, Inc.*, 882 S.W.2d 717, 720-21 (Mo. App. E.D. 1994), summary judgment was affirmed notwithstanding the defendant's

20

assertion of an affirmative defense in its reply to the motion for summary judgment because the affirmative defense was not properly pled in the defendant's answer as required by Rule 55.08.

The Defendants do not contest that they failed in their answer to pled the affirmative defense of equitable estoppel in the manner required by Rule 55.08. Nor do the Defendants contest that summary judgment can only be granted based on a properly pled affirmative defense. Rather, the Defendants claim that Ditto is foreclosed from raising this claim of error because Ditto previously sought (and was denied) the relief of either having the defense stricken from the Defendants' answer or more definitely stated. The Defendants' argument is disingenuous.

Ditto did, in fact, file a motion to strike the Defendants' affirmative defenses or, in the alternative, to require a more definite statement of the defenses. The Defendants filed suggestions in opposition to the motion wherein the Defendants acknowledged that the affirmative defenses were insufficiently pled:

> Discovery has just commenced in this action. Once discovery concludes, Defendants may be in a position to provide more details in support of their affirmative defenses in this matter. However, at the present time, Defendants cannot provide any more information than that which has already been provided.

The Defendants thus asked the trial court to "grant Defendants a period of time in which to conduct discovery and schedule depositions in order to obtain sufficient information to plead more specifically its Answer and Affirmative Defenses [and] *provide a date certain in which Defendants must make said amendment to the Answer*." (Emphasis added.)

21

The trial court denied Ditto's motion without comment or discussion, and without setting a deadline to amend the Defendants answer.

However, the trial court did enter a scheduling order that, *inter alia*, established a deadline of August 15, 2013, to seek leave to amend pleadings. The Defendants never sought leave to amend their answer, and thus never remediated the defective manner in which the affirmative defense of equitable estoppel was pled despite their represented intent to do so. The trial court's denial of Ditto's motion to strike did not relieve the Defendants of their obligation to comport with the pleading requirements set forth in Rule 55.08, particularly in light of the fact that the Defendants agreed they needed to do so in response to Ditto's motion to strike.[11]

Ditto objected to the Defendants' second motion for summary judgment on the basis that the affirmative defense of equitable estoppel had not been properly pled, and was thus not a proper basis upon which summary judgment could be granted as a matter of law. We agree. The Defendants' conclusory assertion of the affirmative defense of equitable estoppel in its answer was insufficient to satisfy the requirements of Rule 55.08. The effect of a deficiently pled affirmative defense is the same as if no attempt is made to allege a defense--the matter is not properly pled. Issues not properly raised in an answer are not preserved for determination in a lawsuit. *Green v. City of St. Louis*, 870 S.W.2d 794, 797 (Mo. banc 1994). Consistent with this fact, we held in *Day v. DeVries & Associates, P.C.*, 98 S.W.3d 92, 95 (Mo. App. W.D. 2003), that the non-movant "would

---

[11]The Defendants' Brief attempts to recast Ditto's second point on appeal as a claim of error in denying Ditto's motion to strike subject to review for an abuse of discretion. We disagree. Ditto has not sought review of the trial court's denial of Ditto's motion to strike, but has instead sought review of the trial court's grant of summary judgment based on a deficiently pled affirmative defense. Our review is *de novo*.

22

have been justified in arguing that [the defendants] were not entitled to summary judgment on the defense of limitations" where the defense was alleged in the answer in only a bare, conclusory fashion, and thus was not properly pled in the manner required by Rule 55.08.

The Defendants argue on appeal that the deficiency of their answer can be overlooked because "[a]ll of the facts upon which [the Defendants] relied in asserting the equitable estoppel defense in the second motion for summary judgment were set forth in [the Defendants'] first motion for summary judgment." [Defendants' Brief, p. 30] The Defendants offer no authority for the proposition that facts alleged in summary judgment pleadings can substitute for the responsive pleading requirements of Rule 55.08. In fact, they cannot. In *Jones v. Landmark Leasing, Ltd.*, 957 S.W.2d 369, 375-76 (Mo. App. E.D. 1997), the Eastern District rejected the argument that facts sufficiently pled to support an affirmative defense in summary judgment pleadings can cure the failure to properly plead the defense in an answer. Similarly, we held in *Chouteau Auto Mart, Inc. v. First Bank of Missouri*, 148 S.W.3d 17, 26 (Mo. App. W.D. 2004), that raising an affirmative defense in summary judgment pleadings fails to satisfy the pleading requirements set forth in Rule 55.08, and does not operate to amend an earlier filed answer. The holdings in these cases merely align with the unambiguous dictate of Rule 55.08 that all applicable affirmative defenses be pled *in a responsive pleading* along with "a short and plain statement of the facts showing that the pleader is entitled to the defense."

23

The Defendants' affirmative defense of equitable estoppel was not properly pled. Thus, equitable estoppel was not an issue in the case. The trial court erred as a matter of law when it granted granting summary judgment in the Defendants' favor on Ditto's breach of contract claim on the basis of the affirmative defense of equitable estoppel.

Point Two is granted.

### Point Three--Whether Genuine Issues of Material Fact Remain in Dispute Precluding the Entry of Judgment on the Basis of the Defense of Equitable Estoppel

Ditto's third point on appeal, alternatively argues that genuine issues of material fact prevented entry of judgment based on the defense of equitable estoppel. Technically, we are not required to address this point on appeal as we have already concluded that the Defendants did not properly plead the affirmative defense of estoppel, rendering the grant of summary judgment on the basis of that defense error as a matter of law. We elect, however, to address the merits of Ditto's third point on appeal as on remand, the trial court will be free "to exercise its sound discretion . . . to allow [the Defendants] to . . . amend" their answer to properly plead the affirmative defense of equitable estoppel in the manner required by Rule 55.08. *Century Fire Sprinklers*, 23 S.W.3d at 880.

> Equitable estoppel arises from the unfairness of allowing a party to belatedly assert known rights on which the other has, in good faith, relied thereby and become disadvantaged. This defense consists of three elements: 1) an admission, statement, or act by the person to be estopped that is inconsistent with the claim that is later asserted and sued upon, 2) an action taken by a second party on the faith of such admission, statement or act, and 3) an injury to the second party which would result if the first party is permitted to contradict or repudiate his admission, statement or act.

*Shores v. Express Lending Servs., Inc.*, 998 S.W.2d 122, 127 (Mo. App. E.D. 1999); *see also Back Ventures, LLC v. Safeway, Inc.*, 410 S.W.3d 245, 255 n.10 (Mo. App. W.D.

24

2013).  "The party who asserts equitable estoppel must establish each element by clear and satisfactory evidence and we restrict the application of the doctrine to cases in which each element clearly appears.  Estoppel is not a favorite of the law and will not 'arise unless justice to the rights of others demands it.'"  *Id.* (citation omitted) (quoting *Peerless Supply Co. v. Indus. Plumbing & Heating Co.*, 460 S.W.2d 651, 666 (Mo. 1970)).

The Defendants' motion for summary judgment argued that Ditto was equitably estopped to claim that the JVA had a fixed duration when it earlier made "repeated representations that the [JVA] was ongoing, indefinite, and terminable at will."  The Defendants' statement of uncontroverted facts in support of its summary judgment motion identified two representations on which Heather purportedly relied, to her detriment: (1) Yun's statement in September 2012 when she and Heather met to discuss Heather's dissatisfaction with the business relationship that the JVA had "no end date," and was "an ongoing agreement as long as [Heather] was using the Ditto name"; and (2) A November 12, 2012 e-mail from Ditto's litigation counsel stating that the JVA is of "unlimited duration" and thus "terminable at will."  These "representations" do not qualify as an admission, statement, or act supporting the defense of equitable estoppel as a matter of law.  "Equitable estoppel applies to the misrepresentation of a material fact, and not to a mere expression of opinion."  31 C.J.S. *Estoppel and Waiver* section 115, p. 471 (2008); *see also Hanna v. Nowell*, 330 S.W.2d 595, 602 (Mo. App. 1959) (holding that a party is ordinarily not estopped by a mere expression of opinion).  "[F]or equitable estoppel to apply, the false representation must be one of existing material fact, and not

of intention, nor may it be a conclusion from facts or a conclusion of law." 31 C.J.S. *Estoppel and Waiver* section 115, p. 471.

Thus, in *Biggs v. Woodmen of America*, 82 S.W.2d 898, 907 (Mo. 1935), our Supreme Court held that a statement regarding the effect of a bylaws change on the obligation to continue to pay monthly assessments to maintain insurance was "hardly . . . more than an expression of an opinion" as to the meaning of the bylaws, precluding estoppel. The Court cited with approval *State ex rel. Thomas v. Trimble*, 259 S.W. 1052, 1057 (Mo. 1924), where the Court stated that "[w]e certainly have never held that a statement made by a general agent . . . expressing an opinion as to the legal effect of the provisions of [a contract] was, absent fraud, binding . . . on the ground of estoppel." Similarly, in *Rechow v. Bankers' Life Co.*, 73 S.W.2d 794, 801-02 (Mo. 1934), the court held that an insurance company's statement following a change in organization of the company about how the change would affect assessments "hardly amounts to more than . . . an expression of opinion relative to the meaning of plaintiff's contract as affected by the reorganization," precluding estoppel.

The statements by Yun and counsel on Ditto's behalf about the duration of the JVA are plainly expressions of opinion about the effect of the provisions of the JVA, and are thus conclusions of law that cannot support the defense of equitable estoppel. An exception to this legal principle exists where an opinion about a matter of law is "made under circumstances that render . . . repudiation inequitable, as where a confidential relation exists between the parties, or in a case of actual or professed special knowledge." 31 C.J.S. *Estoppel & Waiver* section 115, p. 471. That exception plainly does not apply

26

here, particularly in light of the fact that the Defendants sought and secured summary judgment on Ditto's breach of fiduciary duty claim on the basis that no special or confidential relationship existed between Ditto and Heather.

Even if Ditto's statements could be construed to be representations of fact, (which they cannot), the facts viewed in the light most favorable to Ditto establish that the "representations" were expressly disclaimed by Ditto when it initiated a lawsuit on November 30, 2012, in an effort to enjoin Heather from following through on her November 19, 2012 notice of intent to terminate the JVA effective January 15, 2013. Heather was plainly on notice that Ditto disclaimed either party's ability to terminate the JVA at will. Any action taken by Heather after that date, including the decision to follow through with termination of the JVA on February 1, 2013 (a decision which prompted the instant lawsuit), cannot be said to have been taken in reasonable reliance on the faith of Ditto's statements as a matter of law. Moreover, we question how either party could claim to have reasonably relied on the faith of "legal positions" exchanged in heated and protracted negotiations over how to terminate the JVA.

The trial court's grant of summary judgment in favor of the Defendants based on the affirmative defense of equitable estoppel, even assuming same to have been properly pled, was erroneous as the Defendants did not establish two of the essential elements of that defense as a matter of law.

## Conclusion

We reverse the trial court's grant of summary judgment in favor of the Defendants on Ditto's breach of contract claim because the JVA has a definite term that is co-

27

extensive with the express term of the Lease and is not terminable at will.  We reverse the trial court's alternative grant of summary judgment in favor of the Defendants on Ditto's breach of contract claim because the affirmative defense of equitable estoppel is not properly pled in the Defendants' answer, and in any event, the Defendants did not establish all of the essential elements of the affirmative defense of equitable estoppel as a matter of law.  The trial court's grant of summary judgment in favor of the Defendants on Ditto's claim for breach of fiduciary duty was not appealed, and remains in force and effect.

We remand this matter for further proceedings consistent with this Opinion.[12]

_Cynthia L. Martin_ _____
Cynthia L. Martin, Judge


All concur

---

[12]The Defendants' Brief asks us to dismiss Ditto's appeal because Ditto's first and second points relied on are multifarious in violation of Rule 84.04(d) as they claim error both in the grant of the Defendants' motions for summary judgment and in the denial of Ditto's motion for summary judgment.  The Defendants' Brief further asks us to dismiss Ditto's appeal because Ditto relied on its guaranty of the Lease to urge that the JVA term was co-extensive with the Lease term in its arguments before the trial court, and on appeal relies on the language of the Lease itself.  The Defendants' requests are without merit and are denied.

The Defendants also argue in their Brief that Ditto's appeal is frivolous entitling them to damages pursuant to Rule 84.19. Ditto's appeal is plainly not frivolous, as we are reversing the trial court's judgment.  The Defendants' request for damages for frivolous appeal is denied.

After the conclusion of briefing, Ditto filed a motion for sanctions enumerating several alleged briefing violations by the Defendants.  Ditto's motion is without merit and is denied.